**UNITED STATES of America, Appellee,**

**v.**

**George V. CORSO, Defendant–Appellant.**

**No. 910, Docket 93–1354.**

United States Court of Appeals, Second Circuit.

Argued Jan. 10, 1994.

Decided March 29, 1994.

Darrell B. Fields, Legal Aid Soc., Federal Defender Services Unit, New York City, for defendant-appellant.

Paul D. Silver, Asst. U.S. Atty., N.D.N.Y., Albany, NY (Gary L. Sharpe, U.S. Atty., N.D.N.Y., of counsel), for appellee.

Before: MINER and MAHONEY, Circuit Judges, and RESTANI, Court of International Trade Judge.[*]

RESTANI, Judge:

Defendant-appellant George V. Corso ("defendant") appeals from a sentence entered by the United States District Court for the Northern District of New York, holding that the offense of conviction involved five to seven firearms and required an enhancement by two levels pursuant to U.S.S.G. § 2K2.1(b)(1)

[*] Hon. Jane A. Restani of the U.S. Court of International Trade, sitting by designation.

1. A firearm silencer is a device that reduces the audible discharge of a firearm. *Webster's Third New International Dictionary* 2117 (1981).

2. The dictionary definition of a receiver is as follows:

(1991). For the reasons set forth below, we remand for further findings on the number of firearms involved.

## FACTS AND BACKGROUND

On May 14, 1992, Bureau of Alcohol, Tobacco and Firearms ("ATF") Special Agent Michael Lawrence ("Agent Lawrence"), upon information obtained from a firearms trace, went to defendant's residence/business premises to inquire about a "Streetsweeper" shotgun that defendant had allegedly sold to one Paul Sheedy. At the premises, and with the consent of defendant, Agent Lawrence observed the basement level, which had been converted into a gun-smith work area of some kind. While there, Agent Lawrence observed a drill press, three suspected machine gun receiver tubes, one object resembling a firearm silencer, three more completed silencers and one partially manufactured silencer.[1] Agent Lawrence seized all firearm silencers. Subsequent investigations indicated that defendant had no registered firearms or firearm silencers on record with the ATF nor had ATF received an application for registration from him.

Agent Lawrence sought and obtained a warrant to search the premises further, and executed the warrant on May 19, 1992. At this time Agent Lawrence realized that three receiver tubes, which he had discovered during the earlier search of the premises on May 14, 1992, had been removed from the work area. Subsequently, defendant and Agent Lawrence drove to West Sand Lake, where three Sten MK II machine gun receivers[2] were retrieved from behind a house. Agent Lawrence seized the receivers and defendant subsequently voluntarily surrendered himself for arrest.

An examination conducted by the Firearms Technology Branch of ATF revealed that three of the five apparent firearm silenc-

[t]he metal frame in which the action of a firearm is fitted and to which the breech end of the barrel is attached.
*Webster's Third New International Dictionary* 1894.

ers functioned effectively as such and compared favorably with other known firearm silencers. Two objects, although resembling silencers, did not incorporate any internal silencer components and were thus non-functional. As for the apparent receivers, one was a section of hollow metal tubing and a template capable of being constructed into a machine gun receiver but with no evidence of machine or hand work on it. Two others were newly manufactured Sten machine gun receiver tubes of the proper size and shape for the construction of a Sten type machine gun. The report concluded that three of the silencers, by design, construction and function, were "firearm silencers" as defined in 18 U.S.C. § 921(a)(24) (1988) and "firearms" as defined in 26 U.S.C. § 5845(a)(7) (1988). It also concluded that the two Sten machine gun receivers were each a "machinegun" as that term is defined in 26 U.S.C. § 5845(b) (1988).

Pursuant to a plea agreement signed on February 10, 1993, defendant pleaded guilty to one count of engaging in the business of a manufacturer of firearms without having registered as required by and in violation of 26 U.S.C. § 5861(a) (1988). The plea agreement reserved the parties' respective rights to address the court on the issue of enhancement as set out in U.S.S.G. § 2K2.1(b)(1)(B). This section mandates a two-level enhancement if the offense involved five to seven firearms. The presentence report stated that defendant admitted making one silencer for the purpose of test-firing weapons and also making the two machine gun receivers, which were going to be displayed on a wall in his home.

The presentence report recommended a base offense level of 18, a two-point enhancement for special skill, and a two-point enhancement for an offense involving five to seven firearms. It then subtracted three points for defendant's acceptance of responsibility, resulting in a total offense level of 19. The total offense level of 19, combined with a criminal history category of I, resulted in a sentencing range of 30–37 months. Without the two points for five to seven firearms

defendant's offense level would have been 17 instead of 19, with a sentencing range of 24–30 months. A one-point enhancement for three to four firearms would justify a sentence of 27–33 months and an offense level of 18. The judge accepted the presentence report but departed downward due to the mitigating circumstance of defendant's poor health. *See* 18 U.S.C. § 3553(b) (1988); U.S.S.G. §§ 5H1.4, 5K2.0 (1991). The court ultimately imposed a sentence of eighteen months imprisonment, one year of supervised release and a special assessment of $50.[3]

Defendant objects to the two-level enhancement for the number of firearms on two main grounds. First, he contends that because he believed that two of the silencers were "fake," he lacked the requisite scienter. This argument was based in part on an advertisement for "fake" silencers by the company that supposedly sold the devices to defendant.

Second, defendant argues that the two Sten machine gun receivers should not be used in calculating the number of firearms, because he was misled by an assurance from ATF that the receivers were legal. The defendant relied on a letter dated December 11, 1986, by the Chief of the Firearms Technology Branch of ATF, to CATCo., the arms company that sold the receivers to defendant. This letter stated in pertinent part as follows:

> The receiver tube and template, in and of themselves, are not regulated by the Gun Control Act of 1968. However, if this tube is possessed in conjunction with other STEN submachinegun components, the combination could be considered a combination of parts from which a machinegun can be assembled, and subject to the provisions of the National Firearms Act (NFA).

> With respect to your question concerning the marking of a machinegun by an individual, Section 922(*o*), Chapter 44, Title 18, U.S.C., makes it unlawful for any person to possess a machinegun which was not registered prior to the effective date of this section. Therefore, an ATF Form 1, Application to Make and Register a Firearm,

---

**3.** The court did not state that this would have been the proper sentence regardless of the of-

fense level. Thus, the alleged error in the calculation of the offense level is not harmless.

cannot be approved if the application is to make a machinegun.

\* \* \* \* \* \*

With respect to your question concerning component parts for machineguns, internal parts for machineguns, in and of themselves, are generally not subject to the provisions of the NFA. It is recommended that machinegun component parts only be sold to individuals who lawfuly [sic] possess weapons for which the parts are designed. If machinegun component parts are possessed in conjunction with drilling fixtures, templates, and/or instructions intended for use in converting a weapon into a machinegun, those combinations could be subject to the provisions of the NFA.

If you plan to offer any of the above tubes, drilling fixutres [sic], templates, or parts for sale, you should notify customers that machineguns cannot be lawfully made from these components.

Defendant argues that this letter represented to CATCo. and thus to him that he could lawfully acquire the machine gun receivers. He also relies on the advertisement for the sale of Sten MK II receivers issued by CAT-Co., in which it was stated that the receiver kits are "(BATF approved) NO FFL REQUIRED!" The advertisement further stated that the kits come with a "[c]opy of BATF approval letter." Based on these arguments, defendant now appeals.

## DISCUSSION

■ Factual findings of the district court will be reviewed under the clearly erroneous standard, whereas issues that turn primarily on the legal interpretation of a Guideline term will be reviewed *de novo*. *United States v. Stroud,* 893 F.2d 504, 507 (2nd Cir.1990). Whether or not scienter is required in the National Firearms Act and the Sentencing Guidelines is a question of law, reviewed *de novo*. On the other hand, whether there is sufficient evidence on the record concerning defendant's knowledge of the "dangerous nature" of the silencers and whether the defense of entrapment by estoppel avails defendant are questions of fact, reviewed under the clearly erroneous standard.

### A. Requirement of Scienter in the Sentencing Guidelines

■ Defendant is not challenging his conviction for firearms violations. He is only attacking his sentence, and specifically the use of two Sten machine gun receivers and three firearm silencers in enhancing his offense level under the Sentencing Guidelines. Defendant contends that the Sentencing Guidelines incorporate the scienter requirement of a provision of the National Firearms Act, prohibiting possession of an unregistered firearm, under which he was not convicted. *See* 26 U.S.C. § 5861(d) (1988). In order to address defendant's contention, we must inquire whether the Sentencing Guidelines require the same level of scienter as the statute, and, if so, what type of scienter is specified in the statute.

The United States Sentencing Guidelines effective at the time of the offense provide as follows:

(b) Specific Offense Characteristics

(1) If the offense involved three or more firearms, increase as follows:

. . . .

| | | |
|---|---|---|
| (A) | 3–4 | add 1 |
| (B) | 5–7 | add 2 |

U.S.S.G. § 2K2.1(b)(1)(A), (B) (1991). Although the text of this provision does not indicate the requisite scienter for its application, we are not without some guideposts. Application note 9 provides as follows:

[f]or purposes of calculating the number of firearms under subsection (b)(1), count only those firearms that were unlawfully sought to be obtained, unlawfully possessed, or unlawfully distributed.

U.S.S.G. § 2K2.1 application note 9 (1991). Based on this application note, the defense argues that the government must establish that defendant knew that the objects he possessed were genuine firearms. The government contends that no scienter of any type is required for enhancement under the relevant guideline.

Cases interpreting another provision of § 2K2.1(b) have held that no specific scienter is required for applying the enhancement provisions. *See United States v. Goodell,* 990

F.2d 497, 499 (9th Cir.1993) (upholding strict liability enhancement of sentence of convicted felon for possessing stolen firearm); *United States v. Litchfield,* 986 F.2d 21, 23 (2d Cir.1993) (per curiam) (Guideline increasing sentence for possession of stolen firearm did not require knowledge that firearm was stolen); *United States v. Mobley,* 956 F.2d 450, 452 (3d Cir.1992) (implying no scienter requirement in enhancement for possession of stolen gun by convicted felon); *United States v. Singleton,* 946 F.2d 23, 25 (5th Cir.1991) (same), *cert. denied,* —— U.S. ——, 112 S.Ct. 1231, 117 L.Ed.2d 465 (1992), *see also United States v. Schnell,* 982 F.2d 216, 220–21 (7th Cir.1992) (sentence of a convicted felon who knowingly possessed a firearm without knowing serial number was obliterated could be enhanced); *see also* U.S.S.G. § 2K2.1 application note 19 (1993) (enhancement under § 2K2.1(b)(4) applies "whether or not the defendant knew or had reason to believe that the firearm was stolen or had an altered or obliterated serial number"). As indicated, these cases deal with enhancement for possession of either stolen firearms or firearms with obliterated serial numbers under a provision of § 2K2.1(b) not applicable to the case at bar. They do not address application note 9.

The words "unlawfully possessed" contained in application note 9 to § 2K2.1 of the Guidelines refer back to whatever scienter requirement exists in the statute respecting, *inter alia,* possession. By using the word unlawfully, the same requirement of scienter as exists under the statute is incorporated into the Sentencing Guidelines, and becomes a requirement for enhancement.[4]

**B. Requirement of Scienter in the National Firearms Act**

The National Firearms Act ("the Act") makes it unlawful for any person, *inter alia,*

   (a) to engage in business as a manufacturer or importer of, or dealer in, firearms

without ... having registered as required by section 5802; or

   ....

   (d) to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record.

26 U.S.C. § 5861(a), (d).[5] The Act is silent on the requisite level of intent for sustaining a conviction thereunder.

In one context, the Supreme Court has held that the Act requires no specific intent or knowledge of the non-registration of hand grenades. *United States v. Freed,* 401 U.S. 601, 607, 91 S.Ct. 1112, 1117, 28 L.Ed.2d 356 (1971). In *Freed,* the appellants were indicted for possessing and conspiring to possess unregistered hand grenades under § 5861(d). 401 U.S. at 604, 91 S.Ct. at 1115. The district court granted the defendant's motion to dismiss on the ground that the prosecution failed to allege scienter in the indictment. *Id.* at 607, 91 S.Ct. at 1117. Justice Douglas, delivering the opinion of the Court, held that

   [t]he Act requires no specific intent or knowledge that the hand grenades were unregistered. It makes it unlawful for any person "to receive or possess a firearm which is not registered to him." By the lower court decisions at the time that requirement was written into the Act *the only knowledge required to be proved was knowledge that the instrument possessed was a firearm.*

*Id.* (emphasis added) (footnote omitted). The prosecution needed only to show general intent, or "the intent to do that which the law prohibits," rather than specific intent, or "the intent to accomplish the precise act which the law prohibits." *Black's Law Dictionary* 810 (6th ed. 1990). Thus, at the very least, *Freed* mandates a finding that the defendant knew the instrument possessed was a firearm.

The decision in *Freed* also sheds additional light on the questions presented by this appeal. In his concurring opinion, Justice Brennan articulated a position which has

---

4. We do not address what scienter requirements the word "unlawfully" in application note 9 may incorporate from other federal, state or local laws restricting the possession of firearms, as 26 U.S.C. § 5861(d) was the only provision that either party considered relevant.

5. The statutory definition of "firearm" includes sawed-off shotguns, 26 U.S.C. § 5845(a)(1), (2), machine guns and machine gun receivers, *id.* § 5845(a)(6), (b), and silencers, *id.* § 5845(a)(7).

since been followed by several circuit courts. On the issue of intent required in order to sustain a conviction, he stated as follows:

> To convict appellees of possession of unregistered hand grenades, the Government must prove three material elements: (1) that appellees possessed certain items; (2) that the items possessed were hand grenades; and (3) that the hand grenades were not registered. The Government and the Court agree that the prosecutor must prove knowing possession of the items and also knowledge that the items possessed were hand grenades. Thus, while the Court does hold that no intent at all need be proved in regard to one element of the offense—the unregistered status of the grenades—knowledge must still be proved as to the other two elements. Consequently, the National Firearms Act does not create a crime of strict liability as to all its elements.

401 U.S. at 612, 91 S.Ct. at 1120 (Brennan, J., concurring). In agreement with the majority, Justice Brennan construed the National Firearms Act as creating two kinds of elements of the offense: (1) elements requiring proof of a general intent; and (2) elements of strict liability. *See id.* (Brennan, J., concurring).

The possession element of National Firearms Act offenses requires proof of general intent, or knowledge that the items possessed are firearms. The question is thus what does it mean to know that something one possesses is a firearm. The test used by many courts today is whether "the defendant knew that he possessed 'a dangerous device of such type as would alert one to the likelihood of regulation.'" *See, e.g., United States v. Kindred,* 931 F.2d 609, 612 (9th Cir.1991) (citation omitted).

In applying the "dangerous device" test to the offense of possession of an unregistered machine gun, the Ninth Circuit adopted the three-pronged test laid down by Justice Brennan's concurring opinion in *Freed.* The Ninth Circuit in *Kindred* outlined three elements to be established by the government, namely, (1) that the defendant possessed a certain object; (2) that the object was a firearm, specifically a machine gun; and (3)

that the machine gun was not registered. *Id.* at 611 (citing *Freed,* 401 U.S. at 612, 91 S.Ct. at 1120 (Brennan, J., concurring)). To satisfy the second element, the prosecution must prove that defendant knew the object possessed was a firearm. *Id.* at 612, 91 S.Ct. at 1120. The defendant in *Kindred* argued that the government was required to prove that defendant knew what he possessed was a firearm within the meaning of the statute. *Id.* at 611, 91 S.Ct. at 1119. The Ninth Circuit rejected defendant's contention and adopted the "dangerous device" test. *Id.* at 612, 91 S.Ct. at 1120.

Similarly, the First Circuit has upheld a conviction for illegal transfer of a shotgun with a barrel less than 18 inches, on the ground that to sustain a conviction, the government need not prove that a defendant knows that he is dealing with a weapon possessing every last characteristic that would subject it to regulation. *United States v. DeBartolo,* 482 F.2d 312, 316–17 (1st Cir. 1973). It is enough for the government to prove that the defendant knew he was "dealing with a dangerous device of such type as would alert one to the likelihood of regulation." *Id.* at 316.

The Tenth Circuit has also approved the "dangerous device" test. *United States v. Staples,* 971 F.2d 608, 612 (10th Cir.1992), *cert. granted,* —— U.S. ——, 113 S.Ct. 2412, 124 L.Ed.2d 635 (1993). In *Staples,* the defendant appealed a conviction by the district court for possession of an unregistered machine gun. *Id.* at 609. He argued, among other grounds, that the district court erred by failing to instruct the jury properly on the level of intent required to sustain a conviction under 26 U.S.C. § 5861(d). *Id.* The judge's instruction read in pertinent part as follows:

> The Government need not prove that a defendant knows he is dealing with a weapon possessing every last characteristic which subjects it to regulation. It is enough to prove he knows that he is dealing with a dangerous device of such type as would alert one to the likelihood of regulation. If he has such knowledge, and if the particular item is in fact regulated, he acts at his peril.

*Id.* at 612 (emphasis omitted). The Tenth Circuit upheld the district court's instructions and affirmed the conviction. *Id.* at 613.

Other circuits have adopted a "general meaning" test. The Fourth Circuit has held that the government is not required to prove that a defendant had actual knowledge of a weapon's physical properties. *United States v. Shilling,* 826 F.2d 1365, 1368 (4th Cir. 1987), *cert. denied,* 484 U.S. 1043, 108 S.Ct. 777, 98 L.Ed.2d 863 (1988). It is sufficient if the defendant is shown to have possessed an item which he knew to be a firearm within the general meaning of that term. *Id.* The Seventh Circuit has held that the government was not required to show that the defendant had specific knowledge that the shotgun was not identified by a serial number or was less than the lawful length, as long as there was proof that the defendant knew he possessed a firearm in the general meaning of the term. *United States v. Ranney,* 524 F.2d 830, 832 (7th Cir.1975), *cert. denied,* 424 U.S. 922, 96 S.Ct. 1130, 47 L.Ed.2d 330 (1976); *see also Morgan v. United States,* 564 F.2d 803, 805 (8th Cir. 1977) (finding knowledge that item possessed was a firearm within general meaning of term sufficient to uphold conviction for possession of unregistered machine gun).

The Eleventh Circuit has upheld a conviction for possession of an unregistered firearm on the grounds that the government need not prove that the weapon in his possession was a firearm within the meaning of the statute, or that he knew registration was required. *United States v. Gonzalez,* 719 F.2d 1516, 1522 (11th Cir.1983), *cert. denied,* 465 U.S. 1037, 104 S.Ct. 1312, 79 L.Ed.2d 710 (1984). *Gonzalez* involved illegal possession and transfer of an automatic weapon. The court outlined only two elements that must be established by the government: (1) that the defendant knowingly possessed an automatic weapon; and (2) that the automatic weapon was not registered to the defendant. *Id.*

On the other hand, three circuits have concluded that a defendant's knowledge that he possessed a firearm as defined by the statute must be proved in order to sustain a conviction. *United States v. Harris,* 959 F.2d 246, 260–61 (D.C.Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 362, 121 L.Ed.2d 275 (1992) (convictions involving use of machine gun in illegal drug distribution were reversed in part on grounds that proof that defendants knew they possessed a proscribed "firearm" within meaning of statute was required); *United States v. Anderson,* 885 F.2d 1248, 1251 (5th Cir.1989) (*en banc*) (8–7 decision) (conviction for possession of unregistered firearms reversed on ground that to sustain such conviction government must prove defendant knew items in question were "firearms" within meaning of National Firearms Act); *United States v. Williams,* 872 F.2d 773, 777 (6th Cir.1989) (government was required to show defendant knew that a firearm as legislatively defined was subject of illegal transfer).

The "statutory meaning" cases represent by far the minority view, rejected by seven circuits including the First, Fourth, Seventh, Eighth, Ninth, Tenth and Eleventh. Furthermore, the reasoning of these cases is inconsistent with traditional notions of criminal law. A reading of the statute requiring knowledge of possessing a firearm within the precise statutory definition would be tantamount to extending to all potential violators a defense whereby they claim ignorance not of facts but of the law itself. The "general meaning" cases, on the other hand, apply a vaguely defined standard that gives little direction to the sentencing court. Therefore, *Kindred*'s "dangerous device" test appears to provide the most accurate description of the law.

▄ The requirement of scienter clearly does not apply to the strict liability element of the statute, *i.e.,* that the weapon should be but is not registered. As to the element of possession, we adopt the "dangerous device" test, which requires that a defendant know that the object he possesses is a dangerous device that would alert one to the likelihood of regulation, rather than a firearm as defined by the statute.

▄ As indicated, defendant contends that two of the silencers were not unlawfully possessed because he believed they were fake and therefore he did not have the requisite

scienter under the National Firearms Act. Consequently, he argues that the two silencers, which he did not manufacture, could not be counted in determining the level of enhancement. The district court made no finding with regard to defendant's contention. On remand, the district court shall determine whether defendant knew that the two silencers were dangerous devices of a type that would alert one to the likelihood of regulation.

■ There is no genuine issue remaining as to the requisite intent for purposes of enhancement regarding the two machine gun receivers that were certified as machine guns. Defendant clearly knew what he possessed because he admitted making the machine gun receivers. In addition, the report of the Firearms Technology Branch concluded "all the major machine operations [on the receivers had] been completed."

C. Entrapment by Estoppel as to Receivers [6]

■ Defendant also argues that the two machine gun receivers should not be considered in determining the level of enhancement because he bought the receivers in reliance upon a statement by an ATF official that the receivers were not regulated by the National Firearms Act. This contention is without merit. The argument is based on the defense of entrapment by estoppel, which can be summarized thus:

> Entrapment by estoppel applies when an authorized government official tells the defendant that certain conduct is legal and the defendant believes the official. To invoke the entrapment by estoppel defense, the defendant must show that he relied on the official's statement and that his reliance was reasonable in that a person sincerely desirous of obeying the law would have accepted the information as true and would not have been put on notice to make further inquiries.

---

**6.** The defense of entrapment by estoppel is different from ordinary entrapment. In order to sustain a defense under the latter, the courts require (1) government inducement of the crime; and (2) absence of predisposition on the part of the de-

*United States v. Weitzenhoff,* 1 F.3d 1523, 1534 (9th Cir.1993) (citations omitted). Judicial decisions indicate great caution should be exercised when it comes to the application of the defense. It has been said that

> [t]he courts invoke the doctrine of estoppel against the government with great reluctance. The only circumstances justifying the use of the doctrine are those which add up to the conclusion that it does not interfere with underlying government policies or unduly undermine the correct enforcement of a particular law or regulation.

*United States v. Browning,* 630 F.2d 694, 702 (10th Cir.1980), *cert. denied,* 451 U.S. 988, 101 S.Ct. 2324, 68 L.Ed.2d 846 (1981).

In any case, on the facts of the instant appeal, this defense clearly does not avail defendant. First, there was no communication from an authorized government official to the defendant to the effect that his acquisition of the receivers was lawful. Defendant's argument is based on a letter from an official of the Firearms Technology Branch addressed to CATCo., a firearms company. Moreover, the letter from the Firearms Technology Branch made it clear that both the external and internal components of machine guns could only be acquired by persons registered and licensed to do so. As a person without registration or license, defendant knew or should have known that he could not lawfully acquire or possess any machine gun components.

Second, even if the letter indicated (which it did not) that possession of machine gun receivers by defendant was lawful, there is no evidence showing that defendant actually saw the letter. He instead relies on an advertisement issued by CATCo., stating that ATF had approved the receivers and promising to send the buyer a copy of the ATF approval letter. The advertisement, however, is fatal to his claim. CATCo. had specifically included a warning about who can lawfully purchase or convert the "drilling features and receiver kits." [7] Defendant

---

fendant. *United States v. Harvey,* 991 F.2d 981, 992 (2d Cir.1993).

**7.** The advertisement provided as follows:

does not fall into any of the categories mentioned. The warning in CATCo.'s advertisement shows clearly that defendant should have been on notice, at least to conduct further inquiries.

Finally, defendant's skills, his attempted conversion of the receivers when he was not licensed to do so, and his removal of the receivers to a clandestine location after the first visit by Agent Lawrence, all support the conclusion that he knew he was breaking the law. In this regard, he cannot rely on the defense of entrapment by estoppel. *See id.* at 703–04 (defense is inapplicable if defendant is not misled and engages in deliberate violation of the law).

## CONCLUSION

We hold that in applying the enhancement provisions of the Sentencing Guidelines involving possession of unlawful firearms a defendant must know that he possesses a dangerous device of a type that would alert one to the likelihood of regulation. The district court did not err in considering two machine gun receivers and one silencer in calculating the level of enhancement. The district court did not make sufficient findings of fact as to defendant's knowledge of the "dangerous nature" of the two remaining silencers. Based on the foregoing, we vacate defendant's sentence and remand for further findings.

**WARNING:** Our drilling features and receiver kits are sold for the legal purposes of 1) Fully automatic, dealer samples, by licensed Class II manufacturers. 2) Dummy non-functioning replicas [—] Check with BATF for instructions. 3) Law enforcement agency in-house conversions. 4) Conversion by an individual on a pre-May 19th approved form I. 5) Storing by anyone, as an investment or personal interests. While the possession of an uncompleted receiver kit or drilling fixture is unrestricted, BATF warns that possession of such a kit or fixture, together with internal conversion parts or machine gun parts, MAY constitute possession of a machine gun even if no effort has been made to assemble one. CatCo does not sell any internal conversion parts kits. Notice: all items are sold in accordance with BATF regulations and all NFA rules and licensing procedures apply.