[No. S125236. Feb. 8, 2007.]

THE PEOPLE, Plaintiff and Appellant, v.
MARIA SOCORRO CHACON, Defendant and Respondent.

**560**

---

## COUNSEL

Steve Cooley, District Attorney, George M. Palmer, Head Deputy District Attorney, Patrick D. Moran, Brent Riggs, Brentford J. Ferreira and Phyllis C. Asayama, Deputy District Attorneys, for Plaintiff and Appellant.

Nasatir, Hirsch, Podberesky & Genego, Michael D. Nasatir, Tariq A. Khero; and John L. Ryan for Defendant and Respondent.

Michael P. Judge, Public Defender (Los Angeles) and John Hamilton Scott, Deputy Public Defender, as Amici Curiae on behalf of Defendant and Respondent.

OPINION

**CORRIGAN, J.**—Maria Socorro Chacon was charged with violating Government Code section 1090 by holding a financial interest in a contract made by the public agency of which she was a member.[1] The trial court ruled in limine that defendant could assert the defense of entrapment by estoppel. As a result, the People announced they could not proceed and the court dismissed the case under Penal Code section 1385.[2] On appeal, the People challenged the recognition of entrapment by estoppel, a question of first impression. The Court of Appeal held it was error to allow the defense, and reversed the dismissal order. We granted defendant's petition for review to consider two issues: (1) whether, on appeal from a pretrial dismissal, the People may obtain review of a ruling that assertedly rendered them unable to proceed; and (2) whether the entrapment by estoppel defense is available under the circumstances of this case.

We conclude that an in limine ruling may be reviewed on appeal from a dismissal. Further, an entrapment by estoppel defense is not available in this case. Accordingly, we affirm the judgment of the Court of Appeal.

## I. FACTUAL AND PROCEDURAL BACKGROUND[3]

Defendant, while a member of the Bell Gardens City Council, sought and obtained appointment as city manager. Her conduct in securing that position resulted in criminal charges under Government Code section 1090.

Defendant solicited the support of fellow Councilmember Rogelio Rodriguez, advising him of her desired salary and terms. However, the Bell Gardens Municipal Code provided that a council member was ineligible for appointment for one year following his or her departure from the council. City Attorney Arnoldo Beltran drafted an ordinance eliminating the waiting period, and Councilmember Pedro Aceituno placed it on the council agenda. Defendant joined the other council members in voting unanimously for the ordinance.

The council met in a special closed session to choose a city manager. Defendant excused herself from this session, but remained in a nearby office.

---

[1] Government Code section 1090 states in pertinent part: "Members of the Legislature, state, county, district, judicial district, and city officers or employees shall not be financially interested in any contract made by them in their official capacity, or by any body or board of which they are members."

[2] Unless otherwise indicated, all further statutory references are to the Penal Code.

[3] The facts are taken from the preliminary hearing transcript.

During a break, City Attorney Beltran asked Councilmember Aceituno to meet with defendant and the mayor to discuss defendant's appointment and contract terms. After Aceituno returned to the session, the council approved defendant's appointment, but modified her requested terms. The council then announced its decision in a public session. Defendant accepted the appointment, resigned from the council and signed an employment contract, approved by Beltran.

Defendant was charged with violating Government Code section 1090 because, as a city council member, she had "participated in making or causing to be made . . . for the Bell Gardens City Council [an employment contract] in which she was financially interested or had the expectation of financial interest." By pretrial motion, defendant informed the court she sought to call Beltran as a witness. She represented that Beltran advised her on the legality of her efforts to become city manager and was actively involved in the appointment process. Concerned that Beltran might invoke his Fifth Amendment privilege not to testify, defendant asked the court to grant him use immunity. By separate motion, the prosecutor sought to exclude evidence of Beltran's advice as irrelevant, arguing that because defendant was charged with a general intent crime, advice of counsel was not a defense.

On the eve of trial, defendant advised the court that she intended to assert the defense of "entrapment by estoppel." Citing *U.S. v. Tallmadge* (9th Cir. 1987) 829 F.2d 767, she contended that the defense, based on federal due process, applied because she relied on advice from a government official that her conduct was legal. The court declined to confer immunity on the city attorney, and took the novel question of the defense under submission.

The court ultimately denied the motion to exclude evidence of Beltran's advice and ruled that defendant could present evidence of entrapment by estoppel. The court expressed doubt that a city official's advice could bind the state, but felt compelled to follow *Cox v. Louisiana* (1965) 379 U.S. 559 [13 L.Ed.2d 487, 85 S.Ct. 476]. In *Cox*, the United States Supreme Court reversed a conviction because the defendant had acted at the direction of the local police chief. Applying *Cox*, the court ruled that it would "permit" the defense, noting the jury must determine whether defendant reasonably relied on Beltran's advice.

The prosecutor called the ruling a "devastating development," and asked for a continuance to seek writ review. Defendant objected that she was ready for trial immediately. The court agreed that its recognition of entrapment by estoppel in these circumstances was a "fair question for appeal," but expressed concern at granting a continuance over defendant's objection.

When the prosecutor asked whether the court intended to instruct on the newly recognized defense, the court replied that it would do so if warranted by the evidence. The prosecutor responded, "[T]he People are announcing that we're going to be unable to proceed to trial." The court then dismissed the case under section 1385.[4]

The trial court incorporated its ruling in the minutes: "The court denies the People's motion to exclude testimony regarding advice of counsel to defendant by the Bell Gardens City Attorney. As a general matter, advice of counsel is not a defense in actions under Government Code 1090 and 1097," which the court determined were general intent crimes.[5] "However, in this case defendant has asserted the defense of entrapment by estopp[el]." The minutes also reflect that the court had "not settle[d] upon the language of any jury instructions, but if defendant's evidence established the necessary elements of the defense the court would give the jury an appropriate instruction. The People then announced they were unable to proceed."

The People appealed under section 1238, subdivision (a)(8) (hereafter section 1238(a)(8)) from "the orders denying the People's motion to exclude evidence and dismissing the case. . . ." The Court of Appeal considered the merits of the in limine ruling. It assumed without deciding that the defense of entrapment by estoppel is recognized in California and that defendant would present sufficient evidence at trial to warrant an appropriate instruction. Unlike the trial court, the Court of Appeal distinguished *Cox v. Louisiana, supra*, 379 U.S. 559, on the basis that the police official in *Cox* was responsible for administering and enforcing the particular statute at issue. The Court of Appeal concluded that the Bell Gardens City Attorney has neither enforcement nor regulatory authority over criminal conflict of interest statutes. Thus, as a matter of law, the city attorney did not have the power to bind the state to an erroneous interpretation of the conflict of interest statutes. The Court of Appeal reversed the order of dismissal. It then directed the trial court to exclude evidence of, and deny instruction on, the defense.

## II. DISCUSSION

### A. *Consideration of the In Limine Ruling*

Defendant claims that although the judgment of dismissal was "technically" appealable, the Court of Appeal improperly considered the underlying

---

[4] Section 1385, subdivision (a) states in relevant part: "The judge . . . may, either of his or her own motion or upon the application of the prosecuting attorney, and in furtherance of justice, order an action to be dismissed. The reasons for the dismissal must be set forth in an order entered upon the minutes. . . ."

[5] Government Code section 1097 prescribes criminal penalties for persons who "willfully" violate Government Code section 1090.

in limine ruling. Defendant urges the People could obtain appellate review of that ruling only in conjunction with a defense appeal following her conviction. (§ 1252.)[6]

The prosecution's right to appeal in a criminal case is strictly limited by statute. (*People v. Williams* (2005) 35 Cal.4th 817, 822 [28 Cal.Rptr.3d 29, 110 P.3d 1239].) Long-standing authority requires adherence to these limits even though the "the People may thereby suffer a wrong without a remedy." (*People v. Superior Court (Howard)* (1968) 69 Cal.2d 491, 499 [72 Cal.Rptr. 330, 446 P.2d 138].) The circumstances allowing a People's appeal are enumerated in section 1238.

■ The People relied on section 1238(a)(8), which allows appeal from "[a]n order or judgment dismissing or otherwise terminating all or any portion of the action including such an order or judgment after a verdict or finding of guilty or an order or judgment entered before the defendant has been placed in jeopardy or where the defendant has waived jeopardy." The trial court dismissed the action in the interest of justice under section 1385 before jeopardy attached. The question here is the permissible scope of review on the People's appeal.

Both defendant and the People agree that the in limine ruling was the focus of the People's appeal. The subsequent dismissal merely followed the People's declared inability to proceed because of the in limine ruling. The Court of Appeal reasoned that "if the case against Chacon goes forward to trial, the entrapment by estoppel defense is allowed, and she is acquitted, the People could not appeal because jeopardy would have attached. This places the People in an impossible position because they could not have obtained appellate review to determine whether the defense of entrapment by estoppel is cognizable."

The Court of Appeal properly relied on the long-established rule that if a trial court dismisses a case because the People announce they cannot proceed in light of a pretrial ruling, the prosecution may appeal the dismissal, and, as part of the appeal, challenge the underlying ruling. This rule, extending back three decades, finds its origin in a line of cases in which trial courts granted nonstatutory suppression motions, then dismissed the actions after the People announced they were unable to proceed. On appeal of the dismissal, these

---

[6] Section 1252 provides in relevant part: "On an appeal by a defendant, the appellate court shall, in addition to the issues raised by the defendant, consider and pass upon all rulings of the trial court adverse to the State which it may be requested to pass upon by the Attorney General."

courts concluded that the merits of such suppression rulings were cognizable. (*People v. Dewberry* (1975) 40 Cal.App.3d 175, 181–185 [114 Cal.Rptr. 815]; *People v. Mills* (1985) 164 Cal.App.3d 652, 654–655 [210 Cal.Rptr. 669]; *People v. Angeles* (1985) 172 Cal.App.3d 1203, 1209–1211 [218 Cal.Rptr. 756]; *People v. Yarbrough* (1991) 227 Cal.App.3d 1650, 1652–1656 [278 Cal.Rptr. 703] (*Yarbrough*).)

In *Yarbrough*, the Court of Appeal noted the general rule that in limine rulings are not binding because the trial court has the power to reconsider, modify or set aside its order before submission of the cause. (*Yarbrough*, *supra*, 227 Cal.App.3d at p. 1655.) This general rules applies to the prosecution as well as defense. (*Ibid.*) Nevertheless, the *Yarbrough* court observed that exceptions to the general rule exist, including the circumstance in which a prosecutor accepts a *dismissal* of the charge in order to obtain review of the ruling on appeal. As the *Yarbrough* court explained, this exception "is recognized by the *Dewberry-Angeles-Mills* line of cases upholding review of an adverse evidentiary ruling on an appeal [of a dismissal] by the People where that ruling renders the People unable to proceed to trial. [Citations.] The court in *Dewberry* reached that conclusion commonsensically: 'It would have little meaning if the court could consider only the technical correctness of the order of dismissal but not review the reason behind it, especially where the two are intertwined.' [Citation.] Allowing appellate review in such a case makes sense for another reason as well: review by writ of prohibition or mandate does not lie. (See, e.g., *People v. Municipal Court* (*Ahnemann*) (1974) 12 Cal.3d 658, 660 [117 Cal.Rptr. 20, 527 P.2d 372].) A final reason for following *Dewberry*, *Angeles* and *Mills* jumps out: the need for consistency and clarity in the definition of reviewable questions on an appeal by the People pursuant to section 1238, subdivision (a)(8)." (*Id.* at pp. 1655–1656.)

■ There is no reason to disturb this well-established rule: When the trial court dismisses the case because the prosecution announces it is unable to proceed as a result of a pretrial ruling, the People may appeal the order of dismissal under section 1238(a)(8) and by this means seek review of that ruling underlying the dismissal.[7] "An appeal under section 1238, subdivision (a)(8) is an election of remedies." (*People v. Dewberry*, *supra*, 40 Cal.App.3d at p. 183.) To obtain appellate review of a pretrial ruling, the prosecution must suffer a dismissal. If the appeal fails, the prosecution is precluded from refiling the case. "If, pursuant to paragraph (8) of subdivision (a), the people prosecute an appeal to decision, or any review of such decision, it shall be *binding* upon them and they shall be prohibited from refiling the case which was appealed." (§ 1238, subd. (b), italics added.)

---

[7] *People v. Rawlings* (1974) 42 Cal.App.3d 952 [117 Cal.Rptr. 651], to the extent it is inconsistent with this conclusion, is disapproved.

Nevertheless, defendant argues that the prosecution should not have been able to "force" a dismissal to obtain review of the pretrial ruling here because that ruling was merely tentative and did not affect the prosecution's case-in-chief. As we shall explain below, the ruling was not tentative. It was a final decision to recognize a novel defense. As to the ruling's impact, the prosecution must evaluate the effect of the ruling on its ability to succeed at trial. Faced with an adverse ruling, the prosecution has two choices: (1) accept the ruling and proceed to trial knowing that, once jeopardy has attached, an adverse ruling may never be appealed; or (2) accept a dismissal and appeal the ruling, knowing that if the ruling is upheld on appeal the case will never go to trial. Either choice entails significant risk. When the People determine they cannot proceed, the trial court may permit the People's election of remedies by dismissing the case.[8] "The Legislature has given the trial court the power to dismiss under the broad standard of justice[] [citation] and there would be no reason to further detain or harass the defendant here by insisting the case continue in some form of vacuum when the People are unable to continue." (*People v. Dewberry, supra,* 40 Cal.App.3d at p. 185.)

Here, on appeal of the dismissal under section 1238(a)(8), the Court of Appeal properly considered the merits of a ruling permitting the assertion of a novel defense.

### B. *Propriety of Recognizing the Defense of Entrapment by Estoppel*

#### 1. *Background*

In a pretrial memorandum, defendant argued, "As demonstrated at the preliminary hearing, Mrs. Chacon relied upon the legal advice and actions of the Bell Garden's [*sic*] City Attorney when she entered into that employment contract [as city manager.]"

At oral argument, defense counsel requested immunity for City Attorney Beltran by making an offer of proof as to what Beltran "could say" at trial. Defense counsel recounted Beltran's anticipated testimony as follows: ". . . I was asked whether this waiting period was essential under state law, or whether we could adopt the ordinance that we finally adopted. I ordered my subordinate . . . to do a memo on that. I took that memo . . . and drafted a

---

[8] Of course, the trial court in its discretion may refuse to dismiss the case. Defendant, who *wants* the dismissal here, does not claim the trial court should have refused to dismiss. Rather, she argues that the in limine ruling was not reviewable. Defendant seeks reversal of the Court of Appeal judgment with directions to affirm the order of dismissal.

statute. I put that statute on the agenda. I had the council vote on it. I was there to explain anything they wanted. . . . [A]s I drafted the statute and as I said in the statute, the waiting period was not required by state law.[9] And if we got rid of the waiting period, we would be in accordance with state law. I checked with other municipalities. They didn't have a waiting period. I put it on the agenda for a first reading. After it was put on for first reading, we had a waiting period. It was put on for a second reading. There were comments. *I spoke to Mrs. Chacon about whether or not this statute was a legal statute, and her actions, if she became city manager or any council member became city manager, whether that would be legal. I authorized that as yes, it would be in compliance with state law. And actions were taken with regard to my advice.*" (Italics added.) "I, then, on December 7th, I placed on the agenda the appointment of Mrs. Chacon to be . . . City Manager. I always do that. I asked Mr. Aceituno to see what she wanted as far as salary. I was in a closed session with the rest of the council members talking about the legality of a city councilman becoming city manager, about the terms and contracts of employment, about what the requirements were for city manager." According to the defense offer of proof, Beltran relayed the council's salary offer and contract terms to defendant and drafted the employment contract.

Defense counsel also said Beltran would testify: "I urged Mrs. Chacon to become city manager. I thought she would be a good city manager. I thought it would be good for the city of Bell Gardens, and I prevailed upon her to sign the contract and give it a try. I told her that if she became city manager, that was an automatic resignation from the city council, and *I never gave any indication that there was anything improper about this entire situation.*" (Italics added.) Defense counsel advised the trial court that witnesses other than Beltran could provide some, but not all of this information.

### 2. *Entrapment by estoppel*

Entrapment by estoppel, based on principles of federal due process, has been recognized by the federal courts and in some sister states. The defense evolved from three United States Supreme Court opinions, although none used the term "entrapment by estoppel." The concept was first applied in *Raley v. Ohio* (1959) 360 U.S. 423 [3 L.Ed.2d 1344, 79 S.Ct. 1257]. Defendants there were convicted of contempt for refusing to answer questions before Ohio's Un-American Activities Commission. The defendants had invoked their privilege against self-incrimination after being advised of their right to do so by the commission chairman. (*Id.* at pp. 424–425.) The advice, however, was contrary to the Ohio immunity statute, which eliminated the

---

[9] The People do not dispute that elimination of the one-year waiting period was lawful.

availability of the privilege for persons testifying before legislative committees. (*Id.* at p. 431.) The United States Supreme Court held that the contempt convictions violated due process: "After the Commission, speaking for the State, acted as it did, to sustain the Ohio Supreme Court's judgment would be to sanction an indefensible sort of entrapment by the State—convicting a citizen for exercising a privilege which the State had clearly told him was available to him." (*Id.* at pp. 425–426.)

In *Cox v. Louisiana*, the Supreme Court applied *Raley* to reverse the convictions of protestors arrested for picketing across the street from a courthouse. The leader of the demonstration had been given permission by the police chief to demonstrate at the location. The demonstrators were nevertheless arrested and convicted under a state statute barring certain demonstrations "near" any courthouse. (*Cox v. Louisiana, supra,* 379 U.S. at pp. 568–571.) In reversing the convictions, the Supreme Court observed: "[T]he highest police officials of the city, in the presence of the Sheriff and Mayor, in effect told the demonstrators that they could meet where they did . . . . In effect, appellant was advised that a demonstration at the place it was held would not be one 'near' the courthouse within the terms of the statute." (*Id.* at p. 571.) "The Due Process Clause does not permit convictions to be obtained under such circumstances." (*Ibid.*)

In *United States v. Pennsylvania Chem. Corp.* (1973) 411 U.S. 655 [36 L.Ed.2d 567, 93 S.Ct. 1804], the court considered the defense in a regulatory setting involving a corporate defendant found to have discharged refuse into navigable waters. The Supreme Court, relying on *Raley* and *Cox,* held the defendant should have been allowed to present a defense that it had been misled by administrative regulations which appeared to permit the defendant's actions. (*Id.* at pp. 670–675.)

Federal cases applying the entrapment by estoppel defense, while varying slightly in their formulation, rest on the premise that the government may not actively provide assurances that conduct is lawful, then prosecute those who act in reasonable reliance on those assurances.[10] Under these limited circum-

---

[10] See, e.g., *U.S. v. Batterjee* (9th Cir. 2004) 361 F.3d 1210, 1216 (a defendant asserting the defense of entrapment by estoppel has the burden of proving that an authorized government official, empowered to render the asserted erroneous advice, and who has been made aware of all the relevant necessary facts, affirmatively told the defendant the proscribed conduct was permissible and that defendant reasonably relied on the erroneous advice); *U.S. v. Funches* (11th Cir. 1998) 135 F.3d 1405, 1407 (to successfully assert this defense, a defendant must actually and reasonably rely on a point of law misrepresented by an official of the state); *U.S. v. West Indies Transport, Inc.* (3d Cir. 1997) 127 F.3d 299, 313 (entrapment by estoppel applies when the defendant establishes that a government official told him the conduct was legal; the defendant relied on the official's statements; and the defendant's reliance was reasonable and in good faith based on the identity of the official, the point of law represented,

stances, fundamental fairness supports the defense, even when the prosecution can prove each element of the crime.

Courts have cautioned that the defense is narrowly circumscribed. (See, e.g., *U.S. v. Spires* (5th Cir. 1996) 79 F.3d 464, 466.) ["The defense is a narrow exception to the general rule that ignorance of the law is no excuse . . . ."]; *U.S. v. Corso* (2d Cir. 1994) 20 F.3d 521, 528 ["Judicial decisions indicate great caution should be exercised when it comes to the application of the defense"]; *U.S. v. Howell* (7th Cir. 1994) 37 F.3d 1197, 1204 ["Entrapment by estoppel . . . is a defense that is rarely available"]; *U.S. v. Smith* (1st Cir. 1991) 940 F.2d 710, 714 [entrapment by estoppel is "recognized as applicable under certain, relatively narrow, circumstances"].)

### 3. *Application*

Contrary to defendant's assertion, the trial court's *recognition* of the entrapment by estoppel defense and its concomitant refusal to exclude supporting evidence was not tentative. Under the court's ruling, of course, defendant was then required to present sufficient evidence to support the defense she was allowed to interpose.[11] Regardless of whether she succeeded in this effort, however, the trial court had made a final legal ruling that the defense was available and, therefore, evidence of Beltran's advice was admissible.

We assume, as do the parties, that defendant would have produced evidence consistent with the offer of proof described above. Under these facts, the defense of entrapment by estoppel is not available as a matter of law.

and the substance of the official's statement); *U.S. v. Trevino-Martinez* (5th Cir. 1996) 86 F.3d 65, 69 (criminal defendant may be entitled to raise a defense of entrapment by estoppel only when a government official or agent actively assures a defendant that certain conduct is legal and the defendant, reasonably relying on that advice, continues or initiates the conduct); *U.S. v. Levin* (6th Cir. 1992) 973 F.2d 463, 468 ("To determine the availability of the defense, the court must conclude that (1) a government must have announced that the charged criminal act was legal; (2) the defendant relied on the government announcement; (3) the defendant's reliance was reasonable; and, (4) given the defendant's reliance, the prosecution would be unfair").

[11] Defendant's proposed jury instruction stated: "Entrapment by Estoppel occurs when a government official such as the City Attorney of Bell Gardens, acts in such a way or represents to the defendant that certain conduct is legal and the defendant reasonably relies on the representation. [¶] In order for Entrapment by Estoppel to apply, the evidence must establish that the reliance on the official's misleading advice was reasonable—in the sense that a person sincerely desirous of obeying the law would have accepted the advice as true, and would have not have been put on notice to make further inquiries. [¶] Here the City Attorney of Bell Gardens is a government official duly licensed and authorized to render a legal opinion to a Bell Gardens Council Member."

■ We also assume, but do not decide, that defendant's conduct would fall within the proscription of Government Code section 1090. (See *ante*, at p. 561, fn. 1.) A contract made in violation of that section may be voided by any party except the financially interested official. (Gov. Code, § 1092.) To incur criminal liability, an official must act both willfully and knowingly. (Gov. Code, § 1097; *People v. Honig* (1996) 48 Cal.App.4th 289, 333–336 [55 Cal.Rptr.2d 555].) An official who purposefully makes the prohibited contract acts "willfully." (*Honig*, at p. 334.) To act "knowingly" the official must be aware "there is a reasonable likelihood that the contract may result in a personal financial benefit to him." (*Id.* at pp. 337, 338.) An official is *not* required to know that his conduct is unlawful. (*Id.* at pp. 336–337.) Therefore, reliance on advice of counsel as to the lawfulness of the conduct is irrelevant.

■ Nevertheless, defendant argues that she is entitled to assert the defense of entrapment by estoppel because City Attorney Beltran is a *government* lawyer, authorized to advise the city council on legal matters.[12] Defendant's attempt to rely on existing authority fails. Unlike those charged in *Cox v. Louisiana, supra*, 379 U.S. 559 and *Raley v. Ohio, supra*, 360 U.S. 423, defendant was not an ordinary citizen confronting the power of the state. Defendant was a member of the executive branch of government. A public office is a position held for the benefit of the people; defendant was obligated to discharge her responsibilities with integrity and fidelity. (*City of Imperial Beach v. Bailey* (1980) 103 Cal.App.3d 191, 197 [162 Cal.Rptr. 663].) The law in question regulates the very manner in which defendant was empowered to exercise her governmental authority. "For over a hundred years our courts have consistently held that that our conflict-of-interest statute, now embodied in [Government Code] section 1090, is intended to enforce the government's right to the absolute, undivided, uncompromised allegiance of public officials by proscribing any personal interest." (*People v. Honig, supra*, 48 Cal.App.4th at pp. 324–325.) "In our society, people of ordinary sensibility should recognize, *without the intervention of a criminal proscription*, that a public official is a trustee and that it is wrong for such a trustee to engage in self-dealing, including the contingent feathering of one's own nest." (*Id.* at p. 338, italics added.)

For these reasons, we are reluctant to extend the defense to public officials who seek to defend conflict of interest accusations by claiming reliance on the advice of public attorneys charged with counseling them and advocating on their behalf. Recognizing entrapment by estoppel in such circumstances is

---

[12] Government Code section 41801 provides: "The city attorney shall advise the city officials in all legal matters pertaining to city business."

antithetical to the strong public policy of strict enforcement of conflict of interest statutes and the attendant personal responsibility demanded of our officials.

▉ The defense is particularly inappropriate here. Bell Gardens is a general law city, in which the city attorney is a subordinate officer of the city council, appointed by and serving at its pleasure.[13] An official cannot escape liability for conflict of interest violations by claiming to have been misinformed by an employee serving at her pleasure. If permitted to rely on the defense of entrapment by estoppel, such an official could insulate herself from prosecution by influencing an appointee to provide the advice she seeks. The appointee would be forced to choose between two masters: the official in whose hands his continued employment rests and the public that both are sworn to serve. Obviously, this circumstance is not in the public interest.[14]

Additional policy considerations also support our conclusion. City Attorney Beltran is authorized to give legal advice to the city council on matters related to city business. He is not similarly situated to those public officials whose actions have been found to bind the state. In *Cox v. Louisiana, supra,* 379 U.S. at page 568, the police chief was charged with administering and enforcing the statute at issue, and in *United States v. Pennsylvania Chem. Corp., supra,* 411 U.S. at page 674, the Army Corp of Engineers was the administrative agency promulgating regulations "as to the meaning and requirements of the statute." In *Raley v. Ohio, supra,* 360 U.S. at page 437, the commission chairman conducting the hearing "clearly appeared to be the agent of the State." Legal advice regarding the application of a statute must be distinguished from the authority to bind the government. Any lawyer may

---

[13] In California, cities are classified as "general law cities," organized under the general law of the state, or "chartered cities," organized under a charter. (Gov. Code, §§ 34100–34102.) The government of a general law city is vested in the city council, city clerk and treasurer, police and fire chiefs, and "[a]ny *subordinate officers* or employees provided by law." (Gov. Code, § 36501, subd. (f), italics added.) A city council may appoint a city attorney and "*such other subordinate officers* or employees as it deems necessary." (Gov. Code, § 36505, italics added.) The city attorney and other appointive officers and employees serve at the pleasure of the city council. (Gov. Code, § 36506.)

[14] Defendant cites *U.S. v. Hedges* (11th Cir. 1990) 912 F.2d 1397, in which Hedges, an Air Force colonel, was convicted under a federal conflict of interest statute for negotiating employment with a defense contractor while still serving in the military. Hedges offered evidence that he had consulted his "Standards of Conduct" officer, who, by regulations and order of General McCarthy, was specifically charged with the "duty and responsibility of precluding any conflict of interest that might arise." (*Id.* at p. 1404.) The Eleventh Circuit Court of Appeals reversed the conviction, concluding the trial court erroneously refused an entrapment by estoppel defense. (*Id.* at p. 1405.) *Hedges* is not binding on us. Further, the *Hedges* court specifically noted that "this is not a reliance on advice of counsel case." (*Ibid.*) Instead, the *Hedges* court based its analysis on the express role of this military ethics officer.

be asked to provide an opinion as to the meaning of a statute. However, only certain government authorities are empowered to administer or enforce particular statutes. Officials like the police chief or the commission chairman are designated to apply and implement the law in question. This specific authority is quite different from the general role of any lawyer to provide a client with a legal interpretation.

The city attorney offering an interpretation of Government Code section 1090 to council members in the course of his daily responsibilities acts simply as a lawyer advising a client. Government Code section 1090 applies statewide to "[m]embers of the Legislature, state, county, district, judicial district, and city officers or employees." City Attorney Beltran's clients are the officials of Bell Gardens. Section 1090 is one of the myriad of state statutes he and other city attorneys must advise upon in the course of their daily responsibilities. Beltran is not authorized to criminally enforce or administer this law.[15]

■ Private attorneys interpret and advise their clients on the application of statutes under all kinds of circumstances. Yet the average citizen cannot rely on a private lawyer's erroneous advice as a defense to a general intent crime. (See *People v. Vineberg* (1981) 125 Cal.App.3d 127, 137 [177 Cal.Rptr. 819]; *People v. Aresen* (1949) 91 Cal.App.2d 26, 35 [204 P.2d 389]; *People v. McCalla* (1923) 63 Cal.App. 783, 793 [220 P. 436].) "The defense of action taken in good faith, in reliance upon the advice of a reputable attorney that it was lawful, has long been rejected. The theory is that this would place the advice of counsel above the law and would place a premium on counsel's ignorance or indifference to the law." (1 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Defenses, § 38, p. 369, and cases cited therein.) Defendant cannot evade that rule by asserting the attorney who mistakenly advised her happened to hold a governmental position.

We express no view as to whether defendant's conduct violated Government Code section 1090. We hold only that the defense of entrapment by estoppel is not available under the offer of proof contained in this record.

---

[15] The city attorney has a limited power to prosecute misdemeanors with the consent of the district attorney. Government Code section 41803.5, subdivision (a) provides: "With the consent of the district attorney of the county, the city attorney of any general law city . . . may prosecute any misdemeanor committed within the city arising out of violation of state law. . . ." At the in limine hearing, the deputy district attorney represented that the Bell Gardens City Attorney does not prosecute misdemeanors. The power to prosecute felonies, such as those charged against defendant, is retained by the district attorney.

## III. DISPOSITION

For the foregoing reasons, we affirm the judgment of the Court of Appeal.

George, C. J., Kennard, J., Baxter, J., Werdegar, J., Chin, J., and Moreno, J., concurred.

Respondent's petition for rehearing was denied March 28, 2007.