Filed 3/17/14  P. v. Sandercock CA2/6
Opinion following rehearing
**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Appellant,<br><br>v.<br><br>THOMAS ANTHONY SANDERCOCK, JR., et al.,<br><br>  Defendants and Respondents. | 2d Crim. No. B238858<br>(Super. Ct. No. F455771)<br>(San Luis Obispo County)<br><br>OPINION ON REHEARING |

Anthony Sandercock, Jr., Christopher Austin and Amy Austin (collectively, "Defendants") were charged with selling marijuana and possession of marijuana for sale. (Health & Saf. Code, §§ 11359 & 11360.)[1]  In a pretrial motion, the trial court approved a defense instruction under the Medical Marijuana Program Act (MMPA).  (§§ 11362.7 et seq.)  The People declared they could not proceed under the instruction.  The trial court entered judgment of dismissal and the People appeal.

We issued a published opinion reversing the trial court because the defense instruction standing alone appeared to allow what the MMPA prohibited, the retail sale of marijuana at a profit.  But the court intended to give other instructions related to the MMPA defense that the parties neglected to mention in their initial briefing.  That prompted us to grant rehearing.

---

[1] All statutory references are to the Health and Safety Code unless stated otherwise.

We have reviewed the entire MMPA instruction and conclude it does not adequately cure the flaw in the challenged instruction. We reverse and remand.

*FACTS*[2]

In the fall of 2010, a San Luis Obispo detective purchased marijuana from people who purported to be representing three different medical marijuana dispensaries called Hopeful Remedies, Open Access Foundation, and West Coast Caregiving Consulting. In each instance, the detective called the dispensary, and someone showed up at her doorstep. The delivery person verified that the detective had a physician's medical marijuana recommendation or asked her to sign a document indicating the delivery person was her caregiver. The delivery person then sold her a quantity of marijuana. For their role in owning or operating one of these dispensaries, Defendants were charged with selling marijuana and possessing marijuana for sale.

*JURY INSTRUCTION*

Prior to trial, the trial court ruled that it would give a jury instruction as follows: "Providing money in exchange for harvested marijuana may, in itself, constitute 'associating for the purpose of collectively cultivating marijuana.' Associating for the purpose of collectively cultivating marijuana does not require any prior relationship between the parties."

The People declared they could not proceed under the instruction. The trial court dismissed the cases and the People appeal. (See *People v. Chacon* (2007) 40 Cal.4th 558, 565 [where the prosecution announces it is unable to proceed as a result of a pretrial ruling, the People may appeal the order of dismissal].)

*DISCUSSION*

A. *Initial Appeal*

In the initial briefing, the People argued that the instruction was legally incorrect.

---

[2] By stipulation of the parties, the facts are taken from police reports.

The Compassionate Use Act ("CUA") and the MMPA together provide a defense to prosecution for these offenses when a defendant is able to raise a reasonable doubt that the possession or sale is effectuated by "[q]ualified patients, persons with valid identification cards, and the designated primary caregivers of qualified patients and persons with identification cards, who associate within the State of California in order [to] collectively or cooperatively . . . cultivate marijuana for medical purposes." (§ 11362.775; *People v. Mower* (2002) 28 Cal.4th 457, 477, 481.)

The People's primary contention was that the instruction (1) made the MMPA defense applicable when the buyer's sole connection to the collective was the purchase itself; and (2) treated delivery-based marijuana dispensaries the same as "brick-and-mortar," storefront dispensaries. In attacking the instruction's sanction of "retail sales," the People also obliquely identified a third possible defect: By stating that paying for marijuana may "in itself" constitute associating for the purpose of collectively cultivating marijuana, the instruction indicated that Defendants need show nothing but the payment itself to qualify under the MMPA.

The People have since acknowledged that intervening decisions have rejected both its primary challenges. (See *City of Monterey v. Carrnshimba* (2013) 215 Cal.App.4th 1068, 1085 & fn. 17 [MMPA reaches mobile dispensaries]; *People v. Jackson* (2012) 210 Cal.App.4th 525, 529-530 [MMPA does not require buyer to have further connection with marijuana collective beyond purchasing marijuana].)

However, consistent with our obligation to independently review jury instructions (*People v. Cole* (2004) 33 Cal.4th 1158, 1210), we concluded that the final problem identified by the People rendered the instruction defective. By stating that "[p]roviding money in exchange for harvested marijuana may, *in itself*, establish the MMPA defense, the instruction seemingly applied to "for-profit" dispensaries. But the CUA and MMPA are explicitly limited to non-profit dispensaries. (§ 11362.765, subd. (a); *People v. Solis* (2013) 217 Cal.App.4th 51, 58-61; see also California Attorney General's 2008 Guidelines for the Security and Non-Diversion of Marijuana Grown for Medical Use, Sections IV.B.5, IV.B.6 <http:// ag. ca. gov/ cms_ attachments/ press/ pdfs/

n 1601_ medical marijuana guidelines. pdf> as of 2/27/14.)  Because the instruction violated this mandate, we reversed.

B.  *Rehearing*

After we issued our opinion, Defendants sought rehearing.  For the first time, they told us that the instruction the People challenged was just one part of a more lengthy MMPA defense instruction.  This was news to us.  The parties' initial briefing made no mention of additional instructions; to the contrary, footnote 3 of the People's opening brief referred solely to an "initial draft copy" of instructions discussed off the record, but never alluded to anything beyond the two-sentence instruction challenged in its initial briefing.

In any event, the additional proposed MMPA defense instructions approved by the trial court state in pertinent part:

"Defendants assert that Health and Safety Code section 11362.775 applies to their conduct as a defense.  They have the burden of producing evidence of such defense to the degree that it raises a reasonable doubt that they are guilty of the crimes charged as violations of Health and Safety Code §§11359 and 11360.

"In order to raise a reasonable doubt of their guilt, they must produce evidence that:

"1.  They had valid recommendations from qualified physicians to use marijuana for medical purposes;

"2.  They operated a collective which is a business or farm or other enterprise which facilitates the collection efforts of patients and caregiver members, including the allocation of costs and revenues.  (*People v. Hochanel* (2009) 176 Cal.App.4th 997, 1010; quoting AG guidelines.);

"3.  They reasonably believed that Detective Chastain had a valid physician's recommendation[;]

"4.  They reasonably believed that Detective Chastain agreed to be a member of the collective so that they reasonably expected to receive labor, resources or

4

money from her to help finance the operation so she could receive medical marijuana. (Health & Safety Code, §11362.655(b)(3); *People v. Hochanel*, *supra*, at p. 1010.)[;]

"5. *They provided the marijuana to Detective Chastain for an amount of money which did not provide them with any more than their reasonable cost of producing and providing same to members of their collective* [italics added];

"6. They intended to, and did, maintain records of all sales and all members' contributions of labor, resources or money to the enterprise. (*Ibid.*; *People v. Urziceann* (2005) 134 Cal.App.4th 747, 785.)"

Defendants contend that paragraph 5 of the lengthier MMPA defense instruction cures the defect we previously identified because it informs the jury that any sale must not be for profit. After soliciting and considering further briefing and oral argument from the parties, our conclusion that the MMPA instruction is problematic remains the same. What differs is our reasoning.

The fifth paragraph of the full instruction certainly sets forth the MMPA's "no profit" mandate. However, the challenged instruction dilutes the force of this "no profit" language and, worse yet, can be read to supersede it. As approved by the trial court, the challenged instruction is independent of—and follows after—what purports to be a listing of the six elements of the MMPA defense. By indicating that "[p]roviding money in exchange for harvested marijuana may, *in itself*, constitute associating for the purpose of collectively cultivating marijuana," this language could be read to trump the non-profit requirement. The danger of confusion is compounded by the absence of any prior reference in the instruction to "associating for the purpose of collectively cultivating marijuana."

Defendants argue that we may not evaluate whether the challenged instruction is potentially misleading vis-à-vis the "no profit" mandate because the People did not raise that specific argument to the trial court. We disagree. But even if this is the case, "we review the trial court's ruling, and not its rationale" (*Avidity Partners, LLC v. State of Calif.* (2013) 221 Cal.App.4th 1180, 1192), and the trial court's ruling regarding the challenged instruction is properly before us. In such cases, we are not "powerless to

5

correct what might be an obvious miscarriage of justice." (*McCarty v. Dept. of Transp.* (2008) 164 Cal.App.4th 955, 984.)  Defendants further assert that *Chacon* trumps this other authority, but *Chacon* upheld the power of appellate courts to review the propriety of a jury instruction prompting a dismissal.  (*People v. Chacon*, *supra*, 40 Cal.4th at pp. 565-566.)  That is what we have done.

Our conclusion that the challenged instruction is confusing and misleading is the last step for us.  It appears that redrafting is in order.

Because we are not in the business of issuing advisory opinions or formulating jury instructions, we leave it to the trial court and the parties to draft appropriate instructions on remand.

The judgment is reversed, and the matter remanded for further proceedings.
NOT TO BE PUBLISHED.


HOFFSTADT, J.[*]


We concur:


GILBERT, P. J.


PERREN, J.

--------

[*] (Judge of the Superior Court of Los Angeles County, assigned by the Chief Justice pursuant to art. 6, § 6 of the Cal. Const.)

6

Barry T. LaBarbera, Judge

Superior Court County of San Luis Obispo

_____

Gerald T. Shea, District Attorney, Jesse Marino, Craig Von Rooyen, Deputy District Attorneys, for Plaintiff and Appellant.

Laura S. Kelly, under appointment by the Court of Appeal, for Defendants and Respondents Thomas Anthony Sandercock, Jr., Christopher Austin and Amy Austin.

Law Offices of James B. Devine, APC, James B. Devine for Defendants and Respondents Valarie Hosking, David Hosking and Steven Gordon.