# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

————————

No. 05-2361

————————

United States of America,

        Appellee,

    v.

Drexel Lee Dukes, Jr.,

        Appellant.

\* \* \* \* \* \* \* \* \* \*

Appeal from the United States
District Court for the Southern
District of Iowa.

————————

Submitted: October 14, 2005
Filed: January 5, 2006

————————

Before ARNOLD, MURPHY, and GRUENDER, Circuit Judges.

————————

GRUENDER, Circuit Judge.

A jury convicted Drexel Lee Dukes, Jr. of two counts of manufacturing or aiding and abetting the manufacture of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), 846 and 2, and two counts of possessing an unregistered firearm silencer in violation of 26 U.S.C. § 5861(d). The district court[1] denied Dukes's pretrial motion to suppress the evidence obtained from two searches and his

———————————

[1]The Honorable Ronald E. Longstaff, Chief Judge, United States District Court for the Southern District of Iowa.

post-verdict motion for a new trial and sentenced Dukes to 94 months' imprisonment. On appeal, Dukes renews his challenges to the searches and to the sufficiency of the evidence. For the reasons discussed below, we affirm the judgment of the district court.

## I. BACKGROUND

Dukes resided with his girlfriend, Pamela Hoselton, in rural Red Oak, Iowa, near the home of Shane and Julie Patent. At approximately 3:00 a.m. on September 11, 2003, a drive-by shooting occurred at the Patents' home. Upon hearing the gunshots, the Patents ran to their window and observed a white Chevy Cavalier with a stripe on the side speeding away. The Patents recognized it as Hoselton's car. The Patents immediately informed the police. After police officers discovered .22-caliber bullets lodged in the side of the Patents' home, they drove past Hoselton's residence, where they observed a white Chevy Cavalier with a stripe on the side parked outside. On this basis, the police obtained a warrant to search Hoselton's car and residence for firearms and ammunition.

While searching Hoselton's residence for firearms and ammunition, police observed evidence of methamphetamine use and manufacture. They immediately obtained a second warrant to broaden the search to include evidence of methamphetamine manufacture and trafficking and to cover a mobile home on the property. The kitchen of the residence contained items such as sixteen boxes of pseudoephedrine, a box containing a by-product of methamphetamine manufacture commonly referred to as "sludge," two scanners and a .22-caliber shell casing. Elsewhere in the residence, police discovered firearms and ammunition, a small vial of methamphetamine and items associated with methamphetamine use. In a cabinet in the dining room, police discovered two objects that were suspected to be homemade firearm silencers, along with a scale. Outside the residence and in the mobile home, police found other items associated with methamphetamine manufacture, such as

stripped lithium batteries, a surveillance camera and propane and carbon dioxide tanks of a type commonly used to store anhydrous ammonia for methamphetamine manufacture. Finally, police found a fanny pack near Dukes's truck that Dukes admitted belonged to him. The fanny pack contained methamphetamine and handwritten instructions for making methamphetamine.

An agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") tested the two suspected firearm silencers. The objects were industrial mufflers for pneumatic air valves that had been modified with holes bored lengthwise through their centers, wide enough for a bullet to pass. In addition, a set of adjustable screws had been added to the end of one of the mufflers that would enable it to be firmly attached as an extension to the end of firearm barrels of various sizes. The ATF agent test-fired a firearm through each suspected silencer. The muffler with the adjustable screws demonstrated the noise reduction characteristics of a high-quality firearm silencer. The other muffler, although damaged in its initial test-firing, still yielded respectable noise reduction characteristics.

In July 2004, Hoselton called the police and asked them to return the property seized during the September 2003 search. Hoselton told the police that she and Dukes had their "asses covered" with respect to the suspected firearm silencers because they could prove similar mufflers were present at Dukes's place of employment. Hoselton also stated that she and Dukes had more of the mufflers at their house. Based on Hoselton's statement, the police obtained another warrant to search the house for firearm silencers. Upon entering the property, police observed fresh evidence of methamphetamine manufacture and again obtained a second warrant to broaden the search to include evidence of methamphetamine manufacture. Police discovered additional fresh evidence of methamphetamine manufacture from the residence, grounds and mobile home, including a new container of methamphetamine "sludge" in a kitchen oven.

Dukes was charged with two counts of manufacturing or aiding and abetting the manufacture of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), 846 and 2, one count based on the evidence from the September 2003 search and the other based on the evidence from the July 2004 search. Dukes also was charged with two counts of possessing an unregistered firearm silencer in violation of 26 U.S.C. § 5861(d). The district court denied Dukes's motion to suppress the evidence obtained from the two searches. After a three-day trial, a jury convicted Dukes on all counts. The district court sentenced Dukes to a prison term of 94 months. On appeal, Dukes argues that the original search warrant was not supported by probable cause and that there was insufficient evidence to support his convictions.

## II.    DISCUSSION

### A.  Probable Cause

The probable cause standard is met when there is a "fair probability," based upon the totality of the circumstances, that the items listed may be found at the place to be searched. *United States v. Coleman*, 349 F.3d 1077, 1083 (8th Cir. 2003). The denial of a motion to suppress is reviewed de novo, but the underlying factual determinations are reviewed for clear error, giving due weight to the inferences of the district court and law-enforcement officials. *Id*.

Dukes contends that the Patents' identification of a white Chevy Cavalier with a stripe on the side was not specific enough to establish probable cause to believe Hoselton's white Chevy Cavalier with a stripe on the side was the vehicle involved in the drive-by shooting. This argument fails. Immediately after the incident, the Patents identified the car as belonging to Hoselton, and the police confirmed the presence of a car matching the Patents' description at Hoselton's nearby residence. It is well-settled that the personal and recent knowledge of named eyewitnesses is

sufficient to establish probable cause. *See, e.g.*, *Cundiff v. United States*, 501 F.2d 188, 190 (8th Cir. 1974). The Patents' description of the vehicle as matching the one belonging to Hoselton, confirmed by the presence of the matching vehicle at Hoselton's residence, was sufficient to establish a fair probability that Hoselton's vehicle was the one involved in the incident. Therefore, the district court did not err in denying the motion to suppress.

## B. Insufficient Evidence

"We review de novo the sufficiency of the evidence, viewing the evidence in the light most favorable to the verdict and upholding it if, based on all the evidence and all reasonable inferences in favor of the verdict, any reasonable juror could find the defendant guilty beyond a reasonable doubt." *United States v. Hill*, 410 F.3d 468, 471 (8th Cir. 2005). Dukes challenges the sufficiency of the evidence to support his convictions for manufacture of methamphetamine and for possession of unregistered firearm silencers. We examine the evidence to support each in turn.

### 1. Manufacture of Methamphetamine

The Government presented extensive evidence from the September 2003 search to prove methamphetamine manufacture, including the discovery of sixteen boxes of pseudoephedrine, a coffee grinder coated with white powdery residue and a box containing methamphetamine "sludge" in the kitchen of Hoselton's residence, plus stripped lithium batteries, propane and carbon dioxide tanks of a type commonly used to store anhydrous ammonia, a surveillance camera, paint thinner and Coleman fuel (a petroleum-based fuel for camp stoves, lanterns and heaters that can be used as a solvent in the methamphetamine manufacture process) on the grounds and in the mobile home. The evidence also included the recipe for methamphetamine manufacture discovered in the fanny pack that Dukes admitted belonged to him. Evidence for the second count from the July 2004 search included a receipt for the

purchase of more packages of pseudoephedrine, coffee filters with white residue, a fresh container of methamphetamine "sludge" in the kitchen, a propane tank displaying a bluish corrosion associated with the storage of anhydrous ammonia and burned remnants of pseudoephedrine packaging and lithium battery casings.

Dukes does not dispute that the evidence was indicative of methamphetamine manufacture in the area. Instead, he argues that the Government produced no evidence that a complete, working methamphetamine lab ever existed on the property. Dukes presents the alternative explanation that the property was strewn with common household junk, some of which coincidentally could be used in the manufacture of methamphetamine, and that unidentified people used or disposed of additional methamphetamine laboratory items on the property without his knowledge. In support of his alternative explanation, Dukes cites the absence of any testimony connecting him to methamphetamine manufacture.

It is true that our cases affirming the sufficiency of the evidence for methamphetamine manufacture often rely partly on the testimony of others who witnessed the defendant's methamphetamine activity. *See, e.g.*, *United States v. Ziesman*, 409 F.3d 941, 948 (8th Cir. 2005) (relying on the testimony of witnesses who saw the defendant "making and using methamphetamine, delivered methamphetamine laboratory supplies to him, and sold methamphetamine for him," as well as physical evidence of a methamphetamine laboratory discovered at the defendant's residence); *United States v. Kessler*, 321 F.3d 699, 702 (8th Cir. 2003) (relying on the testimony of a co-conspirator who manufactured methamphetamine with the defendant, along with physical evidence such as "drug paraphernalia, residual methamphetamine, firearms and ammunition, a police scanner, and the remains of methamphetamine labs"). However, we have never held that physical evidence without corroborating testimony would, as a rule, be insufficient to support a conviction. In this case, the physical evidence of methamphetamine manufacture on the property was extensive. In particular, Dukes's alternative explanation does not

explain items such as the containers of methamphetamine "sludge" discovered in the kitchen in September 2003 and again in the kitchen in July 2004, nor does it explain the methamphetamine recipe discovered in Dukes's fanny pack. Dukes and Hoselton admitted they were methamphetamine users, and the Government introduced evidence that it is common for methamphetamine users to begin manufacturing methamphetamine for their own use to avoid the high costs charged by methamphetamine dealers. In a case where methamphetamine manufacturers in a remote area only were supporting their own home use, there would be no reason to presume involvement by additional co-conspirators or customers who then would be available to testify. We cannot say that a reasonable jury could not find Dukes guilty beyond a reasonable doubt simply because of the absence of incriminating testimony from witnesses or co-conspirators.

In short, the jury considered and rejected Dukes's theory that the items associated with methamphetamine manufacture were merely household items or were placed on the property by others. This conclusion was reasonable in light of all the evidence and the reasonable inferences to be drawn from it. The evidence was sufficient to support Dukes's convictions for manufacturing or aiding and abetting the manufacture of methamphetamine.

### 2. Unregistered Firearm Silencers

The elements of possession of an unregistered firearm silencer under 26 U.S.C. § 5861(d) are that (1) the defendant knew he possessed the object, (2) the defendant knew the object was a silencer, (3) the silencer was capable of operating as designed, and (4) the silencer was not registered to the defendant in the National Firearms Registration and Transfer Record. Eighth Circuit Model Jury Instruction § 6.26.5861. Dukes challenges the sufficiency of the evidence with respect to the second element, the defendant's knowledge.

The Government's burden of proof on the knowledge element of § 5861(d) depends upon whether the firearm can be characterized as "quasi-suspect." *United States v. Walker*, 428 F.3d 1165, 1171 (8th Cir. 2005) (citing *Staples v. United States*, 511 U.S. 600, 611-12 (1994)). An object that appears to be a traditionally lawful firearm, such as a rifle, is not quasi-suspect. *Id.* On the other hand, an object that fits the broad statutory definition of "firearm" in 26 U.S.C. § 5845 and does not appear to be traditionally lawful, such as a hand grenade, sawed-off shotgun or Molotov cocktail, is quasi-suspect. *Id.* at 1171-72. Whether an object is quasi-suspect depends upon the likelihood that one would know from the obvious characteristics of the object that one "was engaging in illegal activity by possessing the object." *Id.* at 1172.

If the characteristics of the object render it quasi-suspect, the Government need only prove that the defendant "knowingly possessed the item." *Id.* at 1171. For a non-quasi-suspect object, the Government has the additional burden of proving that the defendant knew of the specific characteristics of the object that made it subject to § 5861. *United States v. Barr*, 32 F.3d 1320, 1323 (8th Cir. 1994). In other words, for a non-quasi-suspect object, the Government must prove beyond a reasonable doubt that the defendant knew the object he possessed had the characteristics that brought it within the statutory definition of "firearm" in 26 U.S.C. § 5845. *Staples*, 511 U.S. at 602.

On appeal, the Government takes the position that the suspected homemade firearm silencers are quasi-suspect objects. We need not decide that question, however, because in this case the jury made the necessary finding for possession of a non-quasi-suspect firearm under § 5861(d). The jury instructions required the jury to find that Dukes "knew [the object] was a firearm silencer," Jury Instruction No. 11, and correctly defined "firearm silencer" as "any device for silencing, muffling, or diminishing the report of a portable firearm," Jury Instruction No. 13. *See* 26 U.S.C. § 5845(a)(7) (cross-referencing 18 U.S.C. § 921(a) for the applicable definition of

"firearm silencer"). Thus, in order to reach its guilty verdict for possession of unregistered firearms, the jury necessarily had to find that Dukes knew each muffler was a device for silencing, muffling, or diminishing the report of a portable firearm—the knowledge element required by *Staples* for non-quasi-suspect objects.

Dukes argues that there was insufficient evidence to support the jury's finding that he knew the modified mufflers to be firearm silencers. "[K]nowledge can be inferred from circumstantial evidence, including any external indications signaling the nature of the [relevant item]." *United States v. Hall*, 171 F.3d 1133, 1152 (8th Cir. 1999) (quoting *Staples*, 511 U.S. at 615-16 n.11) (second alteration in *Hall*). In this case, Dukes admitted he was aware that the objects were designed to function as noise-muffling devices, that each had been modified with a hole bored lengthwise through its center and that one was fitted with the previously described adjustable screws. The evidence showed that the modifications rendered the devices useless for their intended function on pneumatic air valves. The evidence also showed that Dukes possessed these modified noise-muffling devices in a residence containing multiple firearms where methamphetamine was used and manufactured. Given the circumstances in which Dukes possessed the objects, a reasonable jury could conclude beyond a reasonable doubt that Dukes knew each object was modified to be a device for silencing, muffling, or diminishing the report of a portable firearm. *See Hall*, 171 F.3d at 1152 (upholding a jury's finding of specific intent to possess a firearm silencer where the object was discovered on the defendant's premises in a bag with other noise-muffling materials and a firearm, and the premises were used for methamphetamine distribution). Therefore, the jury verdict of guilty for possession of unregistered firearm silencers was supported by sufficient evidence.

## III.   CONCLUSION

We conclude that the original search warrant was supported by probable cause and that there was sufficient evidence to support Dukes's convictions for

manufacturing or aiding and abetting the manufacture of methamphetamine and possessing unregistered firearm silencers. Therefore, we affirm the entry of judgment on the jury verdict by the district court.

_____