# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

————————

No. 07-1768

————————

United States of America,

        Appellee,

v.

Serar Ahmed Abdullahi,

        Appellant.

Appeal from the United States
District Court for the Western
District of Missouri

————————

Submitted: January 15, 2008
Filed:  March 28, 2008

————————

Before LOKEN, Chief Judge, MURPHY, Circuit Judge, and JARVEY, District Judge[1]

————————

JARVEY, District Judge.

Appellant Serar Ahmed Abdullahi, a naturalized Somali refugee, sent money to individuals in his native country through an informal money transfer practice known as a "hawala."  Abdullahi operated a hawala in Kansas City, Missouri, without a state or federal license.  After pleading guilty to one count of operating an

———————————

[1]Judge John A. Jarvey, United States District Judge for the Southern District of Iowa, sitting by designation.

unlicensed money transmitting business, Abdullahi was sentenced to forty-one months of incarceration followed by a two year term of supervised release. Abdullahi appeals his sentence. We affirm.

Abdullahi was charged in a twenty-five-count indictment on September 29, 2005. Count Two alleged that Abdullahi operated an unlicensed money transmitting business between approximately October 26, 2001, and January 14, 2003, in violation of 18 U.S.C. § 1960(b)(1)(A) and (B), and (b)(2). On August 24, 2006, Abdullahi pleaded guilty to that charge. All remaining counts of the Indictment were dismissed at sentencing. The district court denied downward adjustments to his base offense level for acceptance of responsibility because it found that Abdullahi had not been truthful about the nature of his business or the income he derived from the business. The district court sentenced Abdullahi to a term of forty-one months of incarceration followed by a two year term of supervised release.

Abdullahi appeals his sentence, alleging the district court (1) failed to calculate an appropriate sentence under 18 U.S.C. § 3553(a); (2) unconstitutionally denied him a recording of the sentencing proceeding; and (3) violated the Ex Post Facto Clause of the Constitution by applying the amended version of 18 U.S.C. § 1960 to conduct that occurred prior to the enactment date of the amendment.

***Factual and Procedural Background.***[2] Abdullahi came with family members to the United States from Somalia as a political refugee in 1992. Abdullahi and his family settled in the Kansas City, Missouri, area. Abdullahi's employment history

---

[2] Unless otherwise noted, the facts contained in this section are based on the Pre-Sentence Investigation Report (PSR) prepared by the United States Probation Office for the district court prior to sentencing of Abdullahi on March 28, 2007. Abdullahi originally made objections to the PSR, but withdrew those objections at the time of sentencing.

since 1992 includes jobs as a laborer, an operator of a Somali grocery store, and a taxi cab driver.

From approximately January 5, 2000, to at least January 14, 2003, Abdullahi operated a money transmitting business in Kansas City. Abdullahi did not have a state or federal license to operate a money transmitting business. Abdullahi claimed that he did not personally use the money that he collected, and that he did not profit from his money transmitting business. Abdullahi stated that he charged a one-percent fee for each monetary transaction to cover expenses. Abdullahi's business was located inside the Somali grocery store that he had previously operated.

Abdullahi claimed that he collected money from Somalis living in the United States and sent it to Somalia and other African countries to assist individuals with basic living expenses. Abdullahi maintained six bank accounts in his name and address in the Kansas City area for the purpose of operating the money transmitting business. Abdullahi deposited a total of $1,648,589.87 into the accounts, with $1,165,639.88 of those deposits being made in cash. Abdullahi transferred $1,383,545.69 in interstate and foreign commerce to locations outside the state of Missouri. Abdullahi did not send money directly to Africa. Instead, he transferred the money to Jubba Financial Services, Inc., a money transmitting business located in Minneapolis, Minnesota, who then transferred the money to Africa. Abdullahi transferred $670,707.77 to Jubba Financial Services. In January of 2002, Jubba Financial Services was renamed Kaah Express, F.S., Inc., and Abdullahi transmitted another $365,792.58 to Kaah Express. Abdullahi also transmitted $347,045.34 to a bank account located in Geneva, Switzerland under the name B.P. Shah.

***Guilty Plea and Sentencing.*** The Pre-Sentence Investigation Report (PSR) established Abdullahi's base offense level under the Guidelines at 22. The probation office recommended a two-level reduction in the base offense level for acceptance of responsibility pursuant to Guideline 3E1.1(a), as well as a one-level reduction for

timely notification of his intent to plead guilty pursuant to Guideline 3E1.1(b). Abdullahi's total offense level, therefore, was 19.

On March 28, 2007, Abdullahi appeared before the district court[3] for sentencing. Although he speaks English, a Somali interpreter was provided for him during the proceeding. Abdullahi used the Somali interpreter when he testified and for allocution prior to the imposition of sentence. Abdullahi made no objections to the quality of the interpreter or the translation during the proceeding. Because the district court found that Abdullahi had not been truthful about the nature of his business or the income he derived from his business, the district court denied the recommended adjustments to his base offense level for acceptance of responsibility. Accordingly, the district court established Abdullahi's total offense level at 22, which yielded an advisory sentencing range from forty-one to fifty-one months of incarceration.

Abdullahi later filed a motion to produce a recording of the sentencing proceeding. Abdullahi contended that the Somali interpreter made errors in translation that affected the accuracy and responsiveness of Abdullahi's testimony before the district court. The district court denied Abdullahi's motion to produce. Abdullahi filed a motion for reconsideration of that decision. In support of his motion for reconsideration, Abdullahi included sworn affidavits from two observers of the sentencing proceeding. The two affiants, both American citizens originally from Somalia, alleged that the Somali interpreter made errors in translation during Abdullahi's sentencing proceeding. The district court denied Abdullahi's motion for reconsideration.

---

[3] The Honorable Gary A. Fenner, United States District Judge for the Western District of Missouri, Western Division.

***Reasonableness of Sentence.*** Abdullahi argues that his sentence resulted from an unreasonable application of the factors contained in 18 U.S.C § 3553(a), and is unreasonably disparate when compared to the sentence of probation that another defendant received in 2006 in the Western District of Missouri.[4] The government argues that the district court properly considered the factors contained in Section 3553(a), and that Abdullahi's sentence is reasonable. The government argues that Abdullahi's sentence is not unreasonably disparate when compared to the sentence of probation imposed on another defendant because of distinct factual differences between the two cases.

"If the sentence is within the Guidelines range, the appellate court may, but is not required to, apply a presumption of reasonableness." Gall v. United States, 128 S.Ct. 586, 597 (2007) (internal citation omitted); See also United States v. Garcia, 512 F.3d 1004, 1006 (8th Cir. 2008) (internal citation omitted). In reviewing a sentence, the appellate court "must first ensure that the district court committed no significant procedural error . . . " Gall, 128 S.Ct. at 597. "[T]he appellate court should then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard." Id. As a part of this review, the appellate court must take into account the "totality of the circumstances." Id. "A court abuses its discretion and imposes an unreasonable sentence when it 'fails to consider a relevant factor that should have received significant weight; ... gives significant weight to an improper or irrelevant factor; or ... considers only the appropriate factors but in weighing those factors commits a clear error of judgment.'" United States v. Mousseau, No. 07-1332, 2008 WL 539235, at *3 (8th Cir. February 29, 2008) (internal quotations omitted).

The district court did not abuse its discretion in considering the factors contained in Section 3553(a). Because Abdullahi's sentence of forty-one months is

---

[4] United States v. Nur, Case No. 04-00370-01-CR-W-ODS (unpublished). The Honorable Ortrie D. Smith, United States District Judge, Western District of Missouri served as the presiding judge in Nur.

within the Guideline range, it carries a presumption of reasonableness on appeal. Garcia, 512 F.3d at 1006. The transcript of the sentencing proceeding reflects that the district court considered the factors contained in Section 3553(a). At sentencing, the district court stated:

> Even though the defendant does not have a criminal history he certainly does have a history of defrauding the government in relation to non-payment of taxable income, food stamp violations, his subsidized housing arrangement that he was receiving, payment of rent and the circumstances in relation to his obtaining a commercial drivers license.
>
> At any rate, I believe that a sentence within the range recommended by the guidelines is reasonable and appropriate. In that case, it does reflect the seriousness of defendant's conduct, that it would serve to promote respect for the law and provide just punishment for the offense as well as deter future criminal conduct. And given the defendant's history of defrauding the government, it would additionally serve to protect the public from future criminal conduct of the defendant.
>
> For that reason and taking into consideration the defendant does not have a previous criminal history, I believe that a sentence at the low end of the guidelines ranges is a reasonable and appropriate sentence and I am going to sentence the defendant to a term of 41 months in the custody of the Bureau of Prisons on Count Two of the Indictment.

Although the district court did not explicitly mention the factor of unwarranted sentencing disparities between defendants with similar records guilty of similar

conduct, we find that the district court properly considered it.[5] The district court took judicial notice of a pending sentencing order in United States v. Nur, No. 04-00370-01-CR-W-ODS at Abdullahi's request. "The relevant inquiry is not whether the district court quoted or cited § 3553(a); it is whether the district court actually considered the § 3553(a) factors and whether 'our review of these statutory factors leads us to conclude that they support the reasonableness of the district court's sentencing decision.'" United States v. Long Soldier, 431 F.3d 1120, 1123 (8th Cir. 2005) (internal quotation omitted). After reviewing the statutory factors, we find that they support the reasonableness of the district court's sentencing decision. Accordingly, we find that the district court did not abuse its discretion.

***Denial of Motion for a Recording of the Sentencing Proceeding.*** Abdullahi next contends that the district court violated his right to be meaningfully present at his own trial by refusing to provide him with a recording of the Somali interpreter used at sentencing. In support of this argument, Abdullahi submits affidavits from Abdikarim Hassan Kassim and Mohammed Abdullahi, two American citizens originally from Somalia, who claim to have attended Abdullahi's sentencing. These affidavits indicate that the interpreter improperly translated four questions and answers.

First, the affiants contend that the following question and answer were given at sentencing:

---

[5] Abdullahi argues that his sentence is unreasonable because in 2006, another judge of the same district court sentenced defendant Ahmed Abdi Nur to probation after he pleaded guilty to one count of operating an unlawful money transmitting business in connection with another hawalah. While the cases of Nur and Abdullahi share some factual similarities, Nur qualified for application of U.S.S.G. § 2S1.3(b)(3), which capped his total offense level at 6. After additional adjustments, the district court established Nur's total offense level at 4. The difference between the total offense levels for Nur and Abdullahi adequately accounts for the disparity between their sentences.

Q. What percentage of the money were you receiving?

A. I'm getting paid.

The court has examined the transcript of the defendant's testimony and cannot find this question or this answer. The affiants claim that the correct translation would have been, "I'm not getting paid." However, the transcript reveals that on no fewer than five occasions Abdullahi denied getting paid for his services or implied the same by indicating that he was only reimbursed for his expenses. (Tr. 44, 49, 50, 53, 54).

Second, the affiants claim the following question and answer were given:

Q. Did you charge a fee?

A. Yes, I charged rent.

They claim that the proper translation of the answer would have been, "Yes, I charged a fee." Again, this question and answer do not appear in the sentencing transcript. That transcript reveals that the prosecutor inquired as to whether Abdullahi was using his subsidized housing to operate the unlawful business or claim the subsidy as one of the expenses for which he was reimbursed. Abdullahi denied charging rent as an expense and stated, "I paid rent." Although the affiants claim that the Abdullahi's answer should have been translated as, "Yes, I charged a fee," such an answer would be inconsistent with the five or more occasions noted above where the Abdullahi denied charging a fee.

The affiants further claim that the following question and answer were given:

Q. Do you know what is going on in south Somalia – Do you have any contacts there?

A. Yes, I have contacts there.

The affiants claim that a proper translation should have been as follows, "A:  I am aware of what is going on there, but only through what I have seen on TV."  Again, the court cannot find that question or that answer in the defendant's testimony.  The transcript reveals that Abdullahi was examined about his knowledge of United States warships that had launched attacks into southern Somalia, Al Qaeda's presence in Somalia, and Al Qaeda's receipt of shelter and cover from the Union of Islamic Courts in Somalia.  Abdullahi generally denied any knowledge of any of these activities.

Finally, the affiants claim that the following question and answer were given:

> Q.    Who are the people who used your services?
> A.    The people who used my services are everywhere.

The affiants do not actually contend that there was a mistranslation here.  Rather, one of them claims that he could "see" that Abdullahi misunderstood the question.  As with the other alleged questions and answers, these cannot be found in the transcript of the sentencing.  Rather, Abdullahi testified that he knew the majority of his customers and was impeached with his prior inconsistent statement in which he told the FBI that he only knew five percent of them.

For the reasons set forth above, this court finds that the factual premise for this portion of the appeal does not exist as claimed.  The affiants are simply wrong about questions and answers that they claim to have observed.  Abdullahi is entitled to no relief in this regard.

*D.  Ex Post Facto Application of 18 U.S.C. § 1960.*  Abdullahi argues that the district court violated the Ex Post Facto Clause by applying the amended version of 18 U.S.C. § 1960 to conduct he committed prior to the enactment date of the amended statute.  On October 26, 2001, 18 U.S.C. § 1960 was amended when the

President signed into law the USA PATRIOT ACT of 2001, Pub.L. 107-56, Title III, § 373(a), 115 Stat. 339 (codified as amended at 18 U.S.C. § 1960 (2001)). The amended version of the statute went into effect on October 26, 2001.[6] See President's Remarks on Signing of the USA PATRIOT ACT of 2001, 37 WEEKLY COMP. PRES. DOC. 1550-52 (Oct. 26, 2001) ("The changes, effective today, will help counter a threat like no other our Nation has ever faced."). Abdullahi pleaded guilty to violating 18 U.S.C. § 1960(b)(1)(A) and (B), and (b)(2), between approximately October 26, 2001, and January 14, 2003. At sentencing, the district court found that Abdullahi's offense conduct spanned from approximately January 5, 2000, to January 14, 2003.

Abdullahi argues that prior to the amendment, the statute required the government to prove that the defendant knew that the operation of an unlicensed money transmitting business was illegal. The amendment, Abdullahi argues, removed from the statute the knowledge of illegality requirement. Thus, Abdullahi argues that 1) his guilty plea should be set aside as unknowing and involuntary because Count Two of the Indictment did not allege that Abdullahi knew the operation of unlicensed money transmitting business was illegal; and 2) the district court erred when it included in its sentencing calculations monetary amounts from transactions that Abdullahi made prior to the amendment of the statute. The government argues that the conduct to which Abdullahi pled guilty in Count Two of the Indictment occurred on and after the effective date of the amendment. Thus, the

_____

[6] In his brief, Abdullahi makes several erroneous assertions regarding the date that 18 U.S.C. § 1960 was amended. On page 44 of his brief, Abdullahi asserts that 18 U.S.C. § 1960 was amended on November 20, 2001. On pages 45 and 46 of his brief, Abdullahi asserts three times that 18 U.S.C. § 1960 was amended on November 1, 2001. These erroneous assertions appear to provide the basis for Abdullahi's argument that the district court unconstitutionally applied the amended version of the statute to Abdullahi's conduct between the dates of October 26, 2001, and November 1, 2001 or November 20, 2001.

government argues, the district court did not apply the amended 18 U.S.C. § 1960 in violation of the Ex Post Facto Clause.

Abdullahi did not raise this issue in the district court. This Court reviews issues that are not raised in the district court for plain error. FED. R. CRIM. P. 52(b). While this Court has discretion to correct a forfeited error, the Court should not exercise such discretion unless the error "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." United States v. Olano, 507 U.S. 725, 732 (1993) (internal quotations omitted). "To show that he is entitled to plain error relief, [the defendant] bears the burden of showing prejudice - that is, he must show 'a reasonable probability that the outcome would have been different absent the alleged error.'" United States v. Smith, 508 F.3d 861, 865 (8th Cir. 2007) (internal quotations omitted).

Abdullahi's guilty plea to Count Two of the Indictment does not violate the Ex Post Facto Clause of the Constitution. The Ex Post Facto clause is violated when a law defining a crime or increasing punishment for a crime 1) is applied to events that occurred before its enactment, and 2) disadvantages the affected offender. United States v. Carter, 490 F.3d 641, 643 (8th Cir. 2007). Count Two of the indictment alleged a violation of the statute after the effective date of its amendment. Amounts transmitted prior to that amendment were appropriately considered as relevant conduct under the Guidelines. No Ex Post Facto Clause violation occurred.

Abdullahi also failed to meet his burden to show that he was prejudiced by the district court's inclusion in sentencing calculations of monetary amounts from transmissions that Abdullahi made prior to October 26, 2001. The district court adopted the PSR's uncontradicted allegation that $1,648,589.87 was illegally transferred by the defendant and used it to determine Abdullahi's sentencing range

pursuant to Guideline 2S1.3(a)(2).[7]  Abdullahi does not attempt to identify the amount of money that was transmitted prior to October 21, 2006.  He does not claim or provide proof that his sentencing range would have been different if the district court excluded transmissions of money prior to October 26, 2001.  When reviewed for plain error, the Court of Appeals will not disturb the decision of a district court unless the defendant shows that the alleged error is prejudicial.  See, e.g., United States v. Bailey, 206 Fed Appx. 650, 652-53 (8th Cir. 2006) (upholding sentence on plain error review when defendant failed to show that district court's error affected the Guidelines range).

Abdullahi's sentence is affirmed.

---

[7] Guideline 2S1.3(a)(2) contains a formula for determining the base offense level of a defendant convicted of violating 18 U.S.C. 1960.  Under Guideline 2S1.3(a)(2) a defendant's base offense level is 6 plus the number of offense levels set out in a table in Guideline § 2B1.1.  The offense levels set out in the Guideline 2B1.1 table are based on the amount of funds involved in the offense.  The district court determined that between approximately January 5, 2000 to January 14, 2003, Abdullahi transferred $1,648,589.87 through his unlicensed money transmitting business.  Because Abdullahi's offense involved more than $1 million but less than $2.5 million, 16 offense levels were added pursuant to Guideline 2B1.1(b)(1)(I).  Thus, Abdullahi's base offense level was 22.