# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-1911

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | Appeal from the United |
| | * | States District Court |
| v. | * | for the District of Nebraska. |
| | * | |
| Warren Blankenship, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: September 25, 2008
Filed: January 13, 2009

_____

Before BYE, BEAM, and SHEPHERD, Circuit Judges.

_____

BEAM, Circuit Judge.

Warren Blankenship appeals his forty-six month sentence for possessing an unregistered firearm while being a methamphetamine user. Because the district court failed to make a required finding concerning an upward adjustment, we reverse and remand to the district court for further proceedings.

## I.    BACKGROUND

Blankenship was pulled over in Aurora, Nebraska, for a traffic violation. During the traffic stop, the officer asked to search the vehicle. Blankenship granted permission, and the search uncovered a loaded automatic rifle, baggies with

methamphetamine residue inside the grip of the gun and elsewhere in the car, a methamphetamine pipe, and several other weapon parts. The officer discovered that the gun was not registered, contrary to law. Blankenship was arrested and pleaded guilty, without the benefit of a plea agreement, to possessing an unregistered firearm while being a methamphetamine user.

Blankenship's base offense level was twenty, and the Presentence Investigation Report (PSR) suggested two upward adjustments. The first was for possessing three or more firearms (based on the theory that two of the firearm parts found in the car constituted separately countable firearms). The second was for possessing a firearm in connection with another felony–possession of methamphetamine. Blankenship's resulting guidelines' range was 46-57 months after an adjustment for acceptance of responsibility. Blankenship contested the two adjustments, and at a sentencing hearing, both the government and Blankenship presented evidence. Ultimately, the district court agreed with the government that the gun parts constituted separate firearms for guidelines' purposes, and that the "in connection with" adjustment was necessitated by the fact that the firearms and methamphetamine were both possessed by Blankenship. The district court rejected defense counsel's plea for a below-guidelines' variance, sentencing Blankenship to forty-six months' imprisonment.

## II.    DISCUSSION

We review the district court's sentencing decision for an abuse of discretion, and our review is limited to determining whether the sentence is unreasonable. United States v. Charles, 531 F.3d 637, 640 (8th Cir. 2008). We consider both the procedural and substantive reasonableness of the sentence. United States v. Abdullahi, 520 F.3d 890, 893 (8th Cir.), cert. denied, 129 S. Ct. 307 (2008). We review the district court's factual findings for clear error, and its application of the guidelines de novo. United States v. Green, 225 F.3d 955, 958 (8th Cir. 2000).

Blankenship challenges the procedural reasonableness of the sentence, arguing that the district court erred in applying the recommended upward adjustments. We agree that Blankenship's sentence is procedurally unreasonable with regard to the "in connection with" adjustment of United States Sentencing Guideline § 2K2.1(b)(6), which increases a defendant's base offense level "[i]f the defendant used or possessed any firearm or ammunition in connection with another felony offense." Blankenship's other felony offense was, as indicated, possession of methamphetamine.[1]

Application Note 14(A) to § 2K2.1(b)(6) provides that the "in connection with" adjustment will apply "if the firearm . . . facilitated, or had the potential of facilitating, another felony offense." U.S.S.G. § 2K2.1(b)(6) cmt. n.14(A). This application note was added in 2006. Prior to that time, the guidelines were silent on the definition of "in connection with," and our case law routinely upheld the adjustment when weapons and drugs were in the same vicinity, regardless of whether the underlying drug offense was for possession or trafficking. E.g., United States v. Linson, 276 F.3d 1017, 1018-19 (8th Cir. 2002). However, with the addition of Application Note 14, the Sentencing Commission decided to make a distinction between the factual circumstances of when the other felony was a drug trafficking offense, or alternatively, a simple drug possession offense. If the felony is for drug trafficking, Application Note 14(B) mandates application of the adjustment if guns and drugs are in the same location. U.S.S.G. § 2K2.1(b)(6) cmt. n.14(B). See United States v. Fuentes Torres, 529 F.3d 825, 827 (8th Cir. 2008) (discussing the new application notes to U.S.S.G. § 2K2.1(b)(6) and noting that the Commission treated drug possession and trafficking offenses differently).

---

[1]Blankenship was not actually charged with possession of methamphetamine, but under the guidelines, the adjustment can apply whether or not charges were brought, or a conviction obtained. U.S.S.G. § 2K2.1(b)(6) cmt. n.14(C).

If the underlying drug offense is for simple possession, the district court may still apply the adjustment, but only after making a finding that the firearm facilitated the drug offense.  Id. at 827-28 n.2 (holding that when the "in connection with" offense is a drug *possession* offense, the district court "**must** make the 'in connection with' finding, applying the 'facilitate' standard" from application note 14(A) to guideline § 2K2.1(b)(6))  (emphasis added).  In other words, when the defendant subject to a 2K2.1(b)(6) adjustment possesses a "user" amount of drugs and is not a trafficker, instead of automatically applying the adjustment when both drugs and weapons are involved in the offense, the district court must affirmatively make a finding that the weapon or weapons facilitated the drug offense before applying the adjustment.

At sentencing, the district court stated that simply possessing drugs and guns in the same proximity subjected Blankenship to the adjustment, saying: "the drugs and the guns don't have to be connected under the guidelines.  You just have to possess the drugs . . . ."  Because Blankenship's other felony was for drug possession, and not trafficking, this statement was contrary to Application Note 14(A).

We have on recent occasion construed Application Note 14(A) in the context of a drug possession, as opposed to trafficking, case.  In United States v. Smith, 535 F.3d 883, 885 (8th Cir. 2008), we reversed the district court's application of the 2K2.1(b)(6) adjustment, holding that there was no evidence the firearm and the methamphetamine possessed were connected.  The Smith defendant, who pleaded guilty to being a possessor of methamphetamine residue while also having firearms, was not a drug trafficker, but simply a user of methamphetamine.  In fact, the police only found methamphetamine *residue* in Smith's house when Smith was arrested.  The district court had concluded that since the risk of violence was increased by the use of drugs and possession of firearms, the adjustment should apply.  Citing Application Note 14(A), we reversed, holding that in this unusual case, the evidence was insufficient to show that the firearms facilitated Smith's possession of

-4-

methamphetamine. Id. One important factor was that Smith possessed the guns and drug residue in his own home, making it more likely that it was just coincidence that he possessed both simultaneously in the relative expanse of a residence. Id. at 885-86; see also United States v. Almeida-Perez, Nos. 07-2602, 07-2635, 2008 WL 5214949 (8th Cir. Dec. 16, 2008) (remanding for required 2K2.1(b)(6) finding).

Blankenship possessed a "user" amount of methamphetamine in his automobile, and there is no evidence or allegation that he is a drug trafficker. Therefore Fuentes Torres and Application Note 14(A) indicate that the adjustment only be applied if the district court makes a finding that the firearms facilitated the drug possession offense. Fuentes Torres, 529 F.3d at 827-28 n.2. Blankenship's sentencing court did not make this finding.[2]

## III. CONCLUSION

Accordingly, we reverse and remand for the district court to make this finding. We have considered Blankenship's remaining arguments and find them to be without merit.

Bye, Circuit Judge, concurring in part and dissenting in part.

I concur in the decision to remand because the district court failed to make a required finding of fact to support application of the four-level enhancement for possessing a firearm "in connection with another felony offense." I dissent, however, because the district court also failed to make a required finding of fact to support application of the two-level enhancement for an offense involving three or more firearms.

---

[2]We recognize that the district court did not have the benefit of our Fuentes Torres or Smith decisions at the time of sentencing.

Section 2K2.1(b)(1) of the U.S. Sentencing Guidelines Manual ("U.S.S.G.") provides a two-level increase in a defendant's base offense level if the offense involves three or more firearms. U.S.S.G. § 2K2.1(b)(1). A "firearm" is defined with reference to 18 U.S.C. § 921(a)(3), which provides:

> The term "firearm" means (A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device.

18 U.S.C. § 921(a)(3); see also U.S.S.G. § 2K2.1 cmt. n.1 ("'Firearm' has the meaning given that term in 18 U.S.C. § 921(a)(3)").

The government sought to impose the enhancement based on three separate items found in Blankenship's car: (1) a machine gun; (2) an AR-15 lower receiver; and (3) an AR-15 upper receiver. Blankenship stipulated the machine gun was a firearm, but he contested whether the other two items were firearms. The government argued the AR-15 lower receiver was a firearm because it was a "receiver" within the meaning of § 921(a)(3)(B). It argued the AR-15 upper receiver was a firearm because it was a "silencer" within the meaning of § 921(a)(3)(C).

At the sentencing hearing, the district court heard testimony concerning the AR-15 parts. The government's primary witness was Darren Hampton, a special agent for the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"). Agent Hampton testified that while the AR-15 lower receiver was not fully functional in its current condition, it could become fully functional with the addition of other parts. In support of classifying the AR-15 upper receiver as a silencer, the government introduced a report prepared by the ATF. According to the report, the AR-15 upper receiver had holes drilled into it, which reduced the sound of the report of the firearm by 3.97 decibels. The report concluded the upper receiver "by design, construction, and

-6-

function is a device for silencing or diminishing the report of a firearm." Blankenship testified he bought the upper receiver at a gun show "just to change the upper receiver look," not with the intent of using it as a silencer. He stated he never fired the weapon with the upper receiver attached.

The district court imposed the two-level enhancement. The court concluded the AR-15 lower receiver qualified as a receiver and the AR-15 upper receiver qualified as a silencer. Although it determined the silencing effect of the upper receiver was *de minimis*, the court found the part forms "a method of reducing the sound of the report of what would normally be an AR-15 report." The district court stated the real question for it was "whether the device is intended to or designed to reduce the sound of the report of the firearm." The court concluded it was.

In addition to his other arguments on appeal, Blankenship challenges the district court's determination that both the AR-15 upper and lower receivers count as separate firearms for purposes of the § 2K2.1(b)(1) enhancement. We review the district court's legal conclusions concerning this enhancement de novo and its factual findings for clear error. United States v. Goldman, 447 F.3d 1094, 1096 (8th Cir. 2006).

Though I agree the AR-15 lower receiver counts as a firearm because it is a receiver, I find error in the district court's imposition of the enhancement based on the AR-15 upper receiver. A silencer is defined in the statute as "any device for silencing, muffling, or diminishing the report of a portable firearm, including any combination of parts, designed or redesigned, and intended for use in assembling or fabricating a firearm silencer or firearm muffler, and any part intended only for use in such assembly or fabrication." 18 U.S.C.A. § 921(24). The upper receiver qualifies as a silencer because the district court concluded the item was designed to function as a silencer, which is a factual finding that is not clearly erroneous.

The problem with the district court's analysis, however, is that it never determined whether Blankenship *knew* the item possessed the properties that qualified it as a silencer. The § 2K2.1(b)(1) enhancement counts "only those firearm that were *unlawfully* sought to be obtained, *unlawfully* possessed, or *unlawfully* distributed . . . ." U.S.S.G. § 2K2.1 cmt. n.5 (emphases added). We have previously held that possession of an unregistered silencer is not unlawful under 28 U.S.C. § 5861(d) unless the government proves the defendant knew the item was a device for silencing, muffling, or diminishing the report of a firearm. United States v. Dukes, 432 F.3d 910, 915-16 (8th Cir. 2006); United States v. Hall, 171 F.3d 1133, 1151-52 (8th Cir. 1999). Although we are considering the upper receiver for the purpose of a sentencing enhancement and not a conviction, the same scienter requirement applies, just with a lower burden of proof. See United States v. Corso, 20 F.3d 521, 525 (2d Cir. 1994). This is because the words "unlawfully possessed" in the Application Notes refer to the same scienter requirement existing in the statute. Id. Notably, the government concedes it had to prove Blankenship knew the AR-15 upper receiver could act as a silencer.

The government, and apparently the majority, believe the district court implicitly made this finding by hearing testimony and imposing the enhancement. See United States v. Dortch, 923 F.2d 629, 633 (8th Cir. 1991) (holding remand for specific findings unnecessary where it is implicit in the sentence imposed the district court made the necessary findings). This argument fails, however, because it is not apparent from the sentencing transcript the district court implicitly found Blankenship possessed the silencer with the required scienter. A close reading of the transcript reveals the district court was only concerned with whether the upper receiver was a silencer, not with whether Blankenship knew the item could function as a silencer. It is not clear the district court understood it was required to find Blankenship possessed the silencer with scienter. Instead, the district court repeatedly stated, "The real question for me is whether the device is intended to or designed to reduce the sound of the report of the firearm." It imposed the enhancement after finding the

upper receiver "by design, construction, and function is a device for silencing or diminishing the report of a firearm." This is not the same as determining whether Blankenship knew the item could function as a silencer or was designed to function as a silencer. Based on the complete absence of any discussion concerning Blankenship's knowledge, it appears the district court was not even aware it had to determine Blankenship had this knowledge.

While a finding that the upper receiver is designed to be a silencer *could* support a determination that Blankenship knew the item functioned as a silencer, the district court did not make this finding in that context. The court made this finding for the purpose of concluding the upper receiver was in fact a silencer, not that Blankenship knew it was a silencer. This is because the court stated "a firearm as defined under the statute is a device that reduces the sound or is designed to reduce the sound of the report of the weapon." In light of the court's conclusion that the actual silencing effect of the part was *de minimis*, the court considered the item's intended design to determine whether to classify the part as a silencer, not to determine whether Blankenship possessed the silencer with the required scienter. As such, this is not a case where it is clear the district court understood the requirements of the enhancement—but just failed to make specific findings—such that we can presume the required factual determinations were implicit in the court's application of the enhancement.

Additionally, this is not a case where the record is unequivocal on the issue so that remanding to the district court would be a waste of time. See, e.g., United States v. Boesen, 541 F.3d 838, 851 (8th Cir. 2008) (affirming obstruction of justice sentencing enhancement despite district court's failure to make specific findings concerning scienter where "evidence of the defendant's willfulness was unequivocal and the record left no doubt . . . ."). The record is, at best, inconclusive concerning whether Blankenship knew the upper receiver functioned as a silencer. Blankenship testified he bought the upper receiver because he wanted to change the weapon's

appearance and he never fired the weapon with the upper receiver attached. Even if he had fired the weapon with the upper receiver attached, the part is extremely ineffective as a silencer. In fact, no one asked Blankenship whether he knew the item could silence, or was designed to silence, the report of a firearm. Although the upper receiver was designed to be a silencer and Blankenship attends gun shows and is familiar with gun parts, this does not conclusively establish Blankenship's knowledge of the item's silencing properties. Therefore, I cannot say based on this record that had the district court been aware of the scienter requirement, it would have found the government carried its burden. While the record may support a determination in favor of either party, the evidence is far from unequivocal. Thus, it was the district court's duty to consider this conflicting evidence and determine whether Blankenship possessed the silencer with the required scienter.

The government also argues that even if the upper receiver could not qualify as a silencer because the court failed to determine scienter, the item qualifies as a firearm because it "is designed to or may readily be converted to expel a projectile by the action of an explosive." 18 U.S.C. § 921(a)(3)(A). The government relies on Agent Hampton's testimony that the upper receiver could fire an explosive when attached to a fully functional lower receiver, citing our cases holding the standard for what may "readily be converted" is quite low. See United States v. Mullins, 446 F.3d 750, 756 (8th Cir. 2006); United States v. Smith, 477 F.2d 399, 400 (8th Cir. 1973) (holding weapon was readily convertible even when it would take an eight-hour working day to accomplish the conversion) The government's argument is absurd, however, because it would subsume *every* part that could be attached to a receiver or other part of a weapon to eventually form one complete weapon. Our cases applying § 921(a)(3)(A) involve counting as one firearm a weapon that is missing some individual parts, not counting as separate firearms individual parts of one weapon. To hold otherwise would allow the government to count *every* piece of *one* complete weapon as a separate firearm, which runs contrary to common sense and principles of fairness. My own research has not discovered a single case in which courts have

-10-

considered a part of a weapon a firearm under § 921(a)(3)(A) simply because it could be attached to other parts *that are also being counted as firearms* to make one complete weapon. Therefore, I do not believe the government can count the AR-15 upper receiver as a firearm under § 921(a)(3)(A) for the purpose of the § 2K2.1(b)(1) sentencing enhancement simply because it can be attached to a lower receiver also being counted as a firearm.

The district court erred in applying the § 2K2.1(b)(1) enhancement without determining, explicitly or implicitly, Blankenship possessed the silencer with knowledge it could, or was intended to, function as a silencer. I dissent from any conclusion otherwise.

_____