# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-3879

_____

United States of America,      *
                *
    Plaintiff - Appellee,   *
                *  Appeal from the United States
  v.             *  District Court for the Eastern
                *  District of Missouri.
James P. Dalton,       *
                *
    Defendant - Appellant.  *

_____

Submitted: December 8, 2008
Filed: March 6, 2009

_____

Before MELLOY and BENTON, Circuit Judges, and DOTY,[1] District Judge.

_____

MELLOY, Circuit Judge.

  Defendant James P. Dalton pleaded guilty to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). He appeals his sentence, arguing that the district court made several clearly erroneous factual findings and erroneously applied three separate enhancements. He also argues that the district court erroneously denied his request for a downward departure based on overstated criminal history. Having carefully reviewed the arguments and the record on appeal, including the sentencing transcript, we find Dalton's arguments to be without merit, save one.

___

[1]The Honorable David S. Doty, United States District Judge for the District of Minnesota, sitting by designation.

We address in detail his argument regarding the district court's application of a four-level enhancement for his possession of firearms "in connection with" another felony offense, namely, the felony possession of methamphetamine under Missouri law. See U.S. Sentencing Guidelines Manual § 2K2.1(b)(6) (2007); Mo. Rev. Stat. § 195.202.2. As to this issue, remand for further findings is necessary in light of United States v. Blankenship, 552 F.3d 703 (8th Cir. 2009) and USSG § 2K2.1 cmt. (n.14).

## I. Background

Based on a tip that Dalton, a convicted felon, possessed methamphetamine and several firearms, officers obtained a search warrant for Dalton's home. In the affidavit supporting the search warrant application, the affiant claimed to have seen approximately one-quarter pound of methamphetamine in a black duffel bag in Dalton's home. When executing the warrant, officers did not discover this quantity of drugs. Rather, near Dalton's bed, officers found a line of methamphetamine on a sheet of paper and a baggie containing methamphetamine residue. Officers also found assorted drug paraphernalia, including methamphetamine pipes, a pill crusher, and several bottles containing methamphetamine residue. The parties agree that the total quantity of methamphetamine the officers discovered in Dalton's home was a user quantity insufficient to support an inference of drug trafficking.

Under Dalton's bed, officers found a semi-automatic rifle; a fully automatic rifle and a loaded magazine for the fully automatic rifle; and a partially disassembled, fully automatic rifle with a missing bolt assembly. One of the fully automatic rifles was a semi-automatic rifle that had been modified to be fully automatic. The missing bolt assembly for the second fully automatic rifle was in a nearby drawer. Officers also found fifty-four rounds of ammunition and a second magazine in the bedroom. Both magazines were "large capacity magazines" within the meaning of USSG § 2K2.1 cmt. (n.2).

During execution of the search warrant, Dalton arrived home, admitted possession of the materials the officers had found, and voluntarily opened a locked safe for the officers. In the safe, officers found a blasting cap and an explosive emulsion of a type used for underwater applications.

Dalton pleaded guilty to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). The district court ordered preparation of a presentence investigation report, and in paragraph twenty-two of the report, the probation office recommended a four-point increase in the offense level for possession of firearms "in connection with" the separate offense of felony possession of methamphetamine. See USSG § 2K2.1(b)(6); Mo. Rev. Stat. § 195.202.2. Dalton objected, and the parties addressed this issue at the sentencing hearing. The district court noted the proximity of the firearms and drugs, the nature and number of firearms, and the presence of the explosive material. The court held that the application of the four-point offense-level enhancement was appropriate in Dalton's case.

## II. Discussion

We recently have had opportunities to address application of the section 2K2.1(b)(6) enhancement as applied to felony drug-possession offenses as contrasted with its application to felony drug-trafficking offenses. See Blankenship, 552 F.3d at 705; United States v. Smith, 535 F.3d 883, 886 (8th Cir. 2008). We noted that prior to the Sentencing Commission's addition of Application Note 14 to USSG § 2K2.1(b)(6) in 2006, we "routinely upheld the adjustment when weapons and drugs were in the same vicinity, regardless of whether the underlying drug offense was for possession or trafficking." Blankenship, 552 F.3d at 705. After the addition of Application Note 14, however, we have distinguished possession offenses from trafficking offenses and required more than a temporal and spatial nexus between firearms and drugs to support the enhancement in relation to a possession offense. Id. ("[W]ith the addition of Application Note 14, the Sentencing Commission decided to

make a distinction between the factual circumstances of when the other felony was a drug trafficking offense, or alternatively, a simple drug possession offense." (interpreting USSG § 2K2.1(b)(6) cmt. n. 14(B))). We have emphasized that the 2006 change to the commentary for this Guidelines section established a higher threshold for proving that firearms facilitated the drug offense when the separate felony is a drug-possession offense rather than a drug-trafficking offense. Id. ("If the underlying drug offense is for simple possession, the district court may still apply the adjustment, but only after making a finding that the firearm facilitated the drug offense.").

Our rationale, and the rationale of the Sentencing Commission, has been that the quantities of drugs and money involved in drug trafficking easily support the inference that an offender possesses firearms in connection with the drug offense — firearms are tools of the trade in drug trafficking and are frequently present to protect large quantities of drugs and money. Smith, 535 F.3d at 885. This inference is less supportable when an offender possesses a mere user quantity of drugs and the offense is possession rather than trafficking. See id. ("We recognize the role of firearms in protecting drugs, drug proceeds, and drug transactions. But, the district court's inference that Smith would seek to protect this amount of methamphetamine and facilitate this possession with firearms is unsupported." (internal citation omitted)). Accordingly, to support application of the enhancement based on a felony drug possession, the government must prove, and the district court must find, "at a minimum, the firearm had a purpose or effect with respect to the other felony offense because its presence facilitated or had the potential to facilitate the offense, as opposed to being the result of mere accident or coincidence." Id. (quotation and citation omitted). We review such a finding for clear error. Id.

We read the present record as indicating that the district court applied the section 2K2.1(b)(6) enhancement based on a temporal and spatial nexus between the drugs and firearms. The district court noted the nature and number of firearms, but there was no finding that the firearms "facilitated or had the potential to facilitate the

[felony drug possession] offense, as opposed to being the result of mere accident or coincidence." Smith 535 F.3d at 885. Accordingly, we must vacate the sentence and remand for further proceedings consistent with this opinion.[2]

_____

[2]We express no opinion regarding the merits of the issue. We note only that if the district court applies the enhancement on remand, it must make the necessary finding that the firearm possession facilitated or had the potential to facilitate the felony drug possession.