# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-1731

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Missouri. |
| William Mansfield, also known as | * | |
| William H. Mansfield, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: February 9, 2009
Filed: March 31, 2009

_____

Before RILEY, SMITH, and SHEPHERD, Circuit Judges.

_____

RILEY, Circuit Judge.

William Mansfield (Mansfield) pled guilty to two counts of being a felon and drug user in possession of firearms, and to possession of a machine gun. The district court imposed a four-level increase to Mansfield's base offense level for possession of firearms and ammunition in connection with another felony offense. The district court sentenced Mansfield to 78 months imprisonment. Mansfield appeals, arguing the district court erred by enhancing his offense level absent a finding the firearm facilitated, or had the potential to facilitate, his drug possession felony. We reverse and remand to the district court for further findings.

# I.    BACKGROUND

On April 23, 2006, in response to a report of automatic gunfire, sheriff deputies were dispatched to Mansfield's residence. Upon arrival, the deputies asked Mansfield if he had discharged any weapons. Mansfield replied, "No." The deputies then inquired if Mansfield had identification. Mansfield informed the deputies he had identification in his bedroom, and allowed the deputies to accompany him to retrieve the identification. In the bedroom, the deputies observed a loaded pistol on the nightstand as Mansfield attempted to conceal the pistol with a pillow. The deputies handcuffed Mansfield for officer safety. The deputies asked Mansfield if he had any other weapons in the residence. Mansfield answered affirmatively and led the deputies to a closet where two rifles were located. One rifle receiver contained parts that converted the weapon to a fully automatic M-16 machine gun. The barrel of this rifle was "hot to the touch," indicating the rifle had been fired recently. When asked, Mansfield acknowledged he knew the automatic machine gun was illegal. The deputies confiscated the weapons and ammunition. Mansfield, the sole caregiver for his elderly mother, was not then arrested.

Later that same night, deputies were dispatched to Mansfield's residence for another shots fired call. Mansfield denied firing any weapons, saying he had no more firearms. After obtaining consent to conduct a search, the deputies located another semi-automatic rifle. The deputies arrested Mansfield for possessing an illegal machine gun and being a felon in possession of firearms.

On May 22, 2006, deputies were again dispatched to the Mansfield residence after receiving a report concerning a fight and a man passed out in Mansfield's bathroom. When the deputies arrived, Mansfield was sweating profusely and appeared to be agitated. Mansfield claimed only he and his mother were present. The deputies pushed past Mansfield and proceeded to the bathroom, finding a man lying unconscious on the floor. While paramedics were attempting to revive the man, a deputy, at the request of the paramedics, retrieved towels from the bathroom.

Wrapped inside the towels was a syringe containing a brown liquid, later identified as heroin.

On May 24, 2006, officers executed a search warrant on the Mansfield residence. A clear bag, containing twenty-six individual packets of heroin, was found inside the toilet in Mansfield's bathroom. Among other things, the officers also found: five syringes, $252 in United States currency, three pages containing notes regarding apparent drug sales, two .45 caliber magazines, various ammunition, a letter referring to marijuana cultivation, and a 9 mm pistol with three loaded magazines. The pistol was discovered in a locked trunk in a basement closet, separate from the heroin found in the main floor bathroom.

Mansfield was indicted on two counts of being a felon and drug user in possession of firearms, in violation of 18 U.S.C. §§ 922(g)(1), (3) and 924(a)(2); possession of a machine gun, in violation of 18 U.S.C. §§ 922(o)(1), 921(a)(23), and 924(a)(2); and possession with the intent to distribute heroin, in violation of 21 U.S.C. § 841(a)(1). As part of a written plea agreement, Mansfield entered a plea of guilty to three of the four counts of the indictment. In return, the government dismissed the charge for possession with intent to distribute heroin.

Following his guilty plea, Mansfield was sentenced on March 4, 2008. At sentencing, the district court imposed a four-level increase to Mansfield's base offense level pursuant to the advisory United States Sentencing Guidelines (U.S.S.G.) § 2K2.1(b)(6). Mansfield objected, disputing the existence of a connection between his possession of the firearms and the drugs. In ruling on Mansfield's objection, the district court stated:

> I'm familiar with the additional case law in addition to the case cited by defense counsel and when I consider that case law and then the totality of what was going on there, the activity at the house, the multiple gun incidents, the multiple gun seizures, the drug activity and then this gun

-3-

with ammunition found at that point, I'm going to find that it is in connection with and deny your objection to that.

On appeal, Mansfield argues the district court erred in imposing the four-level enhancement for being a felon in possession of a firearm in connection with another felony. Mansfield asserts the enhancement requires a greater showing that the firearm facilitated, or had the potential to facilitate, the possession of heroin.

## II.    DISCUSSION
### A.    Standard of Review

We review the district court's sentencing decisions for abuse of discretion when determining whether the sentence is reasonable. See Gall v. United States, __ U.S. __, 128 S. Ct. 586, 594 (2007); United States v. Charles, 531 F.3d 637, 640 (8th Cir. 2008). The sentence is reviewed for both procedural and substantive reasonableness. See United States v. Blankenship, 552 F.3d 703, 704 (8th Cir. 2009). "We review the district court's factual findings for clear error, and its application of the guidelines de novo." Id. (citations omitted).

### B.    Sentence Enhancement

After the district court sentenced Mansfield, we held in United States v. Fuentes Torres, 529 F.3d 825, 827 (8th Cir. 2008), that different rules govern the application of U.S.S.G. § 2K2.1(b)(6) depending on whether the underlying felony is for drug trafficking or for drug possession. This holding was based on the 2006 addition of Application Note 14 to § 2K2.1(b)(6), which reads:

> **(A) In General**. Subsections (b)(6) and (c)(1) apply if the firearm or ammunition facilitated, or had the potential of facilitating, another felony offense or another offense, respectively.
>
> **(B) Application When Other Offense is Burglary or Drug Offense**. Subsections (b)(6) and (c)(1) apply . . . (ii) in the case of a drug trafficking offense in which a firearm is found in close proximity to

-4-

drugs, drug-manufacturing materials, or drug paraphernalia. In these cases, application of subsections (b)(6) and (c)(1) is warranted because the presence of the firearm has the potential of facilitating another felony offense or another offense, respectively.

"[W]ith the addition of Application Note 14, the Sentencing Commission decided to make a distinction between the factual circumstances of when the other felony was a drug trafficking offense, or alternatively, a simple drug possession offense." Blankenship, 552 F.3d at 705. While an underlying drug trafficking offense requires an automatic four-level enhancement of the base offense level, an underlying simple drug possession offense requires the district court to determine first whether the firearm facilitated, or had the potential to facilitate, the underlying drug offense before applying the four-level enhancement. See United States v. Dalton, 557 F.3d 589, __ (8th Cir. 2009) ("[T]o support application of the enhancement based on a felony drug possession, the government must prove, and the district court must find, 'at a minimum, the firearm had a purpose or effect with respect to the other felony offense because its presence facilitated or had the potential to facilitate the offense, as opposed to being the result of mere accident or coincidence'" (quoting United States v. Smith, 535 F.3d 883, 886 (8th Cir. 2008))).

The government contends the guns confiscated from Mansfield's residence a month before the drugs were found, combined with other "abundant evidence," show Mansfield was involved in drug trafficking. However, the drug trafficking charge was dismissed and the underlying felony conviction is for drug possession only. Mansfield steadfastly maintained his heroin possession was for personal use, not for trafficking. Mansfield also challenged the presentence investigation report referencing drug sales notes, and the government offered no evidence to demonstrate the notes indicated drug trafficking. The guns removed from Mansfield's home one month earlier could not have facilitated Mansfield's drug possession on May 22, 2006.

At Mansfield's sentencing, the district court only considered the "totality of what was going on there" in determining the gun was used "in connection with" a felony drug offense. <u>Fuentes Torres</u>, 529 F.3d at 927, and Application Note 14(A) require the district court to make a specific finding whether the firearm facilitated, or had the potential to facilitate, Mansfield's drug possession. Based on our recent decisions, the district court erred because it failed to make this specific finding.

Absent a plea, a conviction or an allegation with sufficient supporting evidence of drug trafficking, Mansfield's applicable underlying drug offense is possession. The district court is free to consider the other "abundant evidence" in making a factual determination whether the 9 mm pistol, found on May 24, 2006, in a locked trunk in a basement closet one floor below the packets of heroin, facilitated, or had the potential to facilitate, Mansfield's drug possession felony offense.

## III.  CONCLUSION

We reverse and remand to the district court to determine whether Mansfield's firearm facilitated, or had the potential to facilitate, his underlying drug possession offense.

_____