# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-2299

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Missouri. |
| William Mansfield, also known as | * | |
| William H. Mansfield, | * | [UNPUBLISHED] |
| | * | |
| Appellant. | * | |

_____

Submitted: February 8, 2010
Filed: May 13, 2010

_____

Before RILEY,[1] Chief Judge, SMITH and SHEPHERD, Circuit Judges.

_____

PER CURIAM.

At issue in this appeal is whether the district court[2] clearly erred in imposing a four-level increase to William Mansfield's base offense level pursuant to United States Sentencing Guidelines (U.S.S.G. or Guidelines) § 2K2.1(b)(6) for possession

_____

[1]The Honorable William Jay Riley became Chief Judge of the United States Court of Appeals for the Eighth Circuit on April 1, 2010.

[2]The Honorable Richard E. Dorr, United States District Judge for the Western District of Missouri.

of a firearm in connection with another felony offense. This is the second time we have considered Mansfield's case. See United States v. Mansfield, 560 F.3d 885 (8th Cir. 2009). We previously remanded the case to the district court to make a specific finding on "whether Mansfield's firearm facilitated, or had the potential to facilitate, his underlying drug possession offense." Id. at 888. On remand, the district court again imposed the four-level increase, finding the firearm "facilitated, or had the potential to facilitate, i.e., protect, the heroin possessed by Mansfield." Mansfield again appeals, and we affirm.

## I. BACKGROUND

We recite the facts as stated in our previous opinion.

> On April 23, 2006, in response to a report of automatic gunfire, sheriff deputies were dispatched to Mansfield's residence. Upon arrival, the deputies asked Mansfield if he had discharged any weapons. Mansfield replied, "No." The deputies then inquired if Mansfield had identification. Mansfield informed the deputies he had identification in his bedroom, and allowed the deputies to accompany him to retrieve the identification. In the bedroom, the deputies observed a loaded pistol on the nightstand as Mansfield attempted to conceal the pistol with a pillow. The deputies handcuffed Mansfield for officer safety. The deputies asked Mansfield if he had any other weapons in the residence. Mansfield answered affirmatively and led the deputies to a closet where two rifles were located. One rifle receiver contained parts that converted the weapon to a fully automatic M-16 machine gun. The barrel of this rifle was "hot to the touch," indicating the rifle had been fired recently. When asked, Mansfield acknowledged he knew the automatic machine gun was illegal. The deputies confiscated the weapons and ammunition. Mansfield, the sole caregiver for his elderly mother, was not then arrested.

> Later that same night, deputies were dispatched to Mansfield's residence for another shots fired call. Mansfield denied firing any weapons, saying he had no more firearms. After obtaining consent to conduct a search, the deputies located another semi-automatic rifle. The

deputies arrested Mansfield for possessing an illegal machine gun and being a felon in possession of firearms.

On May 22, 2006, deputies were again dispatched to the Mansfield residence after receiving a report concerning a fight and a man passed out in Mansfield's bathroom. When the deputies arrived, Mansfield was sweating profusely and appeared to be agitated. Mansfield claimed only he and his mother were present. The deputies pushed past Mansfield and proceeded to the bathroom, finding a man lying unconscious on the floor. While paramedics were attempting to revive the man, a deputy, at the request of the paramedics, retrieved towels from the bathroom. Wrapped inside the towels was a syringe containing a brown liquid, later identified as heroin.

On May 24, 2006, officers executed a search warrant on the Mansfield residence. A clear bag, containing twenty-six individual packets of heroin, was found inside the toilet in Mansfield's bathroom. Among other things, the officers also found: five syringes, $252 in United States currency, three pages containing notes regarding apparent drug sales, two .45 caliber magazines, various ammunition, a letter referring to marijuana cultivation, and a 9 mm pistol with three loaded magazines. The pistol was discovered in a locked trunk in a basement closet, separate from the heroin found in the main floor bathroom.

Mansfield was indicted on two counts of being a felon and drug user in possession of firearms, in violation of 18 U.S.C. §§ 922(g)(1), (3) and 924(a)(2); possession of a machine gun, in violation of 18 U.S.C. §§ 922(*o*)(1), 921(a)(23), and 924(a)(2); and possession with the intent to distribute heroin, in violation of 21 U.S.C. § 841(a)(1). As part of a written plea agreement, Mansfield entered a plea of guilty to three of the four counts of the indictment. In return, the government dismissed the charge for possession with intent to distribute heroin.

Following his guilty plea, Mansfield was sentenced on March 4, 2008. At sentencing, the district court imposed a four-level increase to Mansfield's base offense level pursuant to the advisory [Guidelines] § 2K2.1(b)(6). Mansfield objected, disputing the existence of a

connection between his possession of the firearms and the drugs. In ruling on Mansfield's objection, the district court stated:

> I'm familiar with the additional case law in addition to the case cited by defense counsel and when I consider that case law and then the totality of what was going on there, the activity at the house, the multiple gun incidents, the multiple gun seizures, the drug activity and then this gun with ammunition found at that point, I'm going to find that it is in connection with and deny your objection to that.

Mansfield, 560 F.3d at 886-87. The district court sentenced Mansfield to 78 months imprisonment. Id. at 886.

Mansfield appealed the district court's judgment, claiming the district court erred in imposing the four-level enhancement. Id. at 887. We reversed and remanded to the district court with instructions "to determine whether Mansfield's firearm facilitated, or had the potential to facilitate, his underlying drug offense." Id. at 888.

The district court resentenced Mansfield in May 2009. At the resentencing hearing, the government presented testimony from Investigator Larry Keen of the Southwest Missouri Drug Task Force. Investigator Keen participated in the execution of the search warrant at Mansfield's residence on May 24, 2006. According to Investigator Keen, Mansfield was located near a bathroom when the officers entered his residence. The officers then searched the bathroom and found twenty-six small wax bags containing heroin floating in the toilet. Officers discovered a 9 mm pistol with three loaded magazines in a trunk in the basement and a bullet proof vest and helmet in another room of the house. Investigator Keen estimated from where Mansfield was positioned in the residence, Mansfield would have been able to access the firearm and loaded magazines within a minute "if [he] were in a hurry."

At the conclusion of the two-day hearing, the district court once again found a four-level increase was appropriate pursuant to U.S.S.G. § 2K2.1(b)(6). The district court observed the twenty-six bags of heroin found floating in the toilet "was a large supply and there was a reason to protect it and [Mansfield] was doing that." Based on the evidence in the record, the district court made a specific finding that the firearm in the trunk "was there . . . to facilitate and have the potential to facilitate the protection of that quantity of heroin." The district court subsequently entered a detailed sentencing memorandum reiterating the bases of its finding. Mansfield was again sentenced to 78 months imprisonment.

## II.    DISCUSSION

"We review de novo the district court's application of the . . . Guidelines, and we review for clear error the district court's factual findings." United States v. Guiheen, 594 F.3d 589, 591 (8th Cir. 2010) (quoting United States v. Betts, 509 F.3d 441, 445 (8th Cir. 2007)). "The district court's determination that the defendant possessed the firearm[] in connection with another felony is a factual finding that we review for clear error." Id. (quoting United States v. Bates, 561 F.3d 754, 758 (8th Cir. 2009)). "A finding is clearly erroneous 'only if we have a definite and firm conviction that a mistake has been made.'" Id. (quoting United States v. Byas, 581 F.3d 723, 725 (8th Cir. 2009)).

Section 2K2.1(b)(6) advises, "If the defendant used or possessed any firearm or ammunition in connection with another felony offense . . . increase [the base offense level] by **4** levels." The four-level increase should be "appl[ied] if the firearm . . . facilitated, *or had the potential of facilitating*, another felony offense." U.S.S.G. § 2K2.1(b)(6) cmt. n.14(A) (emphasis added). If the underlying felony is drug trafficking, "Application Note 14(B) mandates application of the adjustment if guns and drugs are in the same location." United States v. Blankenship, 552 F.3d 703, 705 (8th Cir. 2009). "If the underlying drug offense is for simple possession, the district court may still apply the adjustment, but only after making a finding that the firearm

facilitated the drug offense." <u>Id.</u> The district court's finding may be based on a preponderance of the evidence. <u>See</u> <u>United States v. Bridges</u>, 569 F.3d 374, 377 (8th Cir. 2009).

The transcript of the resentencing hearing and the district court's subsequent memorandum make clear the district court understood its task and carefully considered counsels' arguments and the evidence in the record. The district court (1) discussed the context and proximity in which the large quantity of heroin and the firearm with the three loaded magazines were found; (2) noted four other firearms had been seized from Mansfield's residence approximately a month before the search warrant was executed, giving Mansfield incentive to hide this firearm in a secure place; and (3) pointed out that, because Mansfield had such a large quantity of heroin in his home, he had motive to protect it. For these reasons, the district court made a specific finding that Mansfield's firearm facilitated, or had the potential to facilitate, his possession of heroin. The district court adequately articulated specific reasons for its finding, and that finding is supported by substantial evidence in the record. We cannot say the district court clearly erred in making this finding. <u>See</u> <u>Guiheen</u>, 594 F.3d at 591.

III. CONCLUSION

We affirm the judgment of the district court.

_____